Edward M. O’Gorman, J.
Petitioner is a publisher. Its reporters requested admission to a meeting of city council members in the City of Newburgh. They were not permitted to attend the meeting. On a separate occasion, petitioner’s reporters sought admission to a meeting of the Zoning Board *848 of Appeals of the City of Newburgh. They were not permitted to attend a portion of that meeting.
Petitioner now brings this proceeding to enforce rights which it claims were violated when each of the respondents barred its reporters from attendance on each of the said occasions. Petitioner seeks to have the court declare that certain recently enacted provisions of the Public Officers Law apply to the respondents, and to have" the court direct compliance therewith by respondents at meetings of the Newburgh City Council and Board of Zoning Appeals to be held in the future.
The case of each respondent will be considered separately.
On January 3, 1977, the City Council of the City of New-burgh met in the city hall at the office of the city manager. There had been no prior public notice of this meeting which was attended by council members to consider, the petition alleges, problems of urban renewal in the city’s waterfront area. Respondents characterized this meeting as a "workshop session”. Petitioner’s reporters attempted to attend this meeting, but were ordered to leave by respondents.
The affidavit of Peter Hall in support of the petition avers that for the past several years the City Council of the City of Newburgh has met on the Thursday evening preceding the regularly scheduled Monday meeting to discuss and make up an agenda for the regular meeting. The public, it is averred, is usually present at these meetings. On one of these Thursdays (Jan 6, 1977), the city council held a meeting attended by the city manager and five members of the city council. The city manager announced at this meeting that the council would adopt a resolution affirming its right to hold closed work sessions, and shortly thereafter petitioner’s reporter was asked to leave the meeting so that other matters could be discussed privately.
The court is now asked to declare that the action of the City Council of the City of Newburgh in barring reporters from this informal meeting was in violation of the provisions of article 7 of the Public Officers Law.
This law, effective on January 1, 1977, provides in pertinent part as follows: "§ 93. * * * Every meeting of a public body shall be open to the general public, except that an executive session of such body may be called and business transacted thereat in accordance with section ninety-five of this article.”
*849 The term "meeting”, as used in section 93, is defined in section 92 of the Public Officers Law as follows: "§ 92. * * * As used in this article: 1. 'Meeting’ means the formal convening of a public body for the purpose of officially transacting public business.”
It will be seen from the foregoing that before the Public Officers Law can be held to apply to a meeting of a particular public body, that meeting must be formally convened, and it must be convened for the purpose of officially transacting public business. The minimum criteria for a meeting which would meet these statutory requirements would include a general notice of the nature of the meeting adequate to inform the public and the officials involved, the presence of a statutory quorum, facilities for and the actual recording of minutes of the proceedings, the use of recognized procedures for the presentation of resolutions and voting thereon, and the intent to adopt, then and there, measures dealing with the official business of the governmental unit.
It would seem to follow that the informal gatherings of the Newburgh City Council for the purpose of holding informal discussions of city business, as detailed in the petition, without the intent to transact any such business at such informal meeting, is not such a meeting as is regulated by the provisions of article 7 of the Public Officers Law.
Petitioner urges the court to construe the statute otherwise. Whether the statute should receive a different construction involves a determination as to what the Legislature intended by its language. The search for the legislative intent as to the application of the Public Officers Law must include a study of the history of similar legislative enactments in other States and the interpretation of those enactments by other courts. It must be presumed that at the time of the final enactment of this statute, the Legislature had in contemplation problems which had arisen in the past in other areas as to the meaning of the language used in open meeting statutes in other States.
A so-called Sunshine Law was adopted in the State of Florida in 1905 (Fla Stat, § 165.22). This statute came before the Supreme Court of Florida for a construction of the words "all meetings” which were required by the statute to be held open to the public. That court decided that inasmuch as the Legislature had used the word "meeting”, the terms "all meetings” had reference only to such formal assemblages of the council sitting as a joint deliberative body as were re *850 quired or authorized by law to be held for the transaction of official municipal business. Following this interpretation, informal meetings of municipal corporations in the State of Florida could lawfully be held to discuss public matters without being subject to the application of the Sunshine Law (see Turk v Richard, 47 So 2d 543 [Fla]).
In 1967, the Florida Sunshine statute was modified to clarify the legislative intent as to the meetings to which it was intended to apply, as follows:
"All meetings * * * at which official acts are to be taken are declared to be public meetings open to the public at all times, and no resolution, rule, regulation or formal action shall be considered binding except as taken or made at such meeting.” (Fla Stat, § 286.011, subd [1]).
Subsequent to the enactment of this modification of the statute, the courts of Florida have applied the Sunshine Law to nonformal meetings as well as to those to which the 1905 act was held to apply (see City of Miami Beach v Berns, 231 So 2d 847 [Fla]).
Despite this history, the New York Legislature, in defining the term "meeting”, wrote into the present law similar language to that used by the Florida court in Turk (supra), which limited the application of the earlier Florida statute to formal meetings. The use of such language tends to support the conclusion that the Legislature intended to limit the application of the New York Public Officers Law to regular meetings only.
In this connection, petitioner has also called the court’s attention to the declaration of the Legislature which appears in section 90 of the new law. By this declaration, the Legislature recognized the desirability of permitting maximum public access to the proceedings of public bodies, so that the public might be able to "attend and listen to the deliberations and decisions that go into the making of public policy.” However, inasmuch as this language was not persuasive enough to cause the Legislature to broaden its definition of the term "meeting” in section 92, the court should not give the declaration greater weight than was given to it by the Legislature itself.
One of the principal functions of a democracy is the peaceful resolution of problems arising when the freedom of one segment of society threatens to interfere with the freedom of another segment of society. The case before the court presents a clear example. On the one hand is the vital freedom of the *851 public to know as much as possible about the activities of its governmental officials, and on the other hand, the interest of government in having access to the maximum information available and the frankest and most complete expression of views in the recommendations and deliberations of its officials in aid of the governmental process. It is a conflict between the right to know and the right to privacy. The case for the public’s right to know is clearly set forth by the Legislature itself in section 90 of the new law. The case for privacy on behalf of the government has been put by one court as follows: "The distinction in government between privacy and required disclosure or exposure to the public poses difficulties. As stated by President Washington there is a public and a private side to governmental office. Nearly two centuries later President Eisenhower repeated that privacy is essential to the efficient and effective administration of our government. Freedom of speech and the right to privacy unquestionably include the right of officials to discuss and to debate with aides and associates and to develop and prepare presentations to the public. The Constitution itself was prepared behind closed doors in sworn secrecy. Historians agree that its adoption was due in no small measure to executive sessions that prevented premature releases.” (Dayton Newspapers v City of Dayton, 52 Ohio Opns 2d 100, 110-111; 23 Ohio Misc 49.)
A democratic society resolves these questions by striking a fair balance between competing interests. The result is reached by the adoption of laws rather than by resort to force. The determination of the proportions of the balance is made by the legislative representatives of the people, and it is for this reason that their assent to those laws is willingly given. If the balance requires adjustment from time to time, resort should be had to the Legislature to make that adjustment. Thus it is, that in a case such as the one before the court, the court should be careful not to subvert this democratic process and substitute its own views of what that balance should be for the balance established by the Legislature.
For the foregoing reasons, the court is of the opinion that the provisions of section 93 of the Public Officers Law, as it is now worded, do not apply to informal meetings of the New-burgh City Council which are not convened for the purpose of transacting public business officially.
Petitioner further seeks a declaration of this court that the City of Newburgh Board of Zoning Appeals is a public body *852 subject to the provisions of the Public Officers Law, and that its reporters were unlawfully barred from a portion of the meeting of this board on January 25, 1977.
There is no question that the City of Newburgh Board of Zoning Appeals is a public body and, as such, is subject to all applicable provisions of the Public Officers Law. It would seem, therefore, that all portions of the meetings of the board of zoning appeals must be open to the public, except such of the board’s proceedings as may be declared exempt by section 98. This section exempts from its operation judicial or quasi-judicial proceedings (§ 98, subd 1).
One of the functions of a board of zoning appeals, in the consideration of applications pending before it, is the conduct of deliberations wherein the members of the board collectively weigh any evidence taken during the hearing, apply the law thereto, and weigh such other matters as are within their discretion to consider, and then reach a conclusion. While performing this deliberative process, a zoning board performs what has long been recognized as a quasi-judicial function. Such a function has been defined as follows:
"The quality of the act rather than the character of the agency exercising the authority is determinative of the nature of the power and the need for procedural due process. Where the administrative tribunal is under a duty to consider evidence and apply the law to the facts as found, thereby exercising a discretion or judgment judicial in nature on evidentiary facts, the function is ordinarily quas/judicial and not ministerial.” (Handlon v Town of Belleville, 4 NJ 99, 105). See, also, Matter of Nash v Brooks, 276 NY 75, 82; People ex rel. Cotton v Leo, 194 App Div 921; 200 W. 79th St. Co. v Galvin, 71 Misc 2d 190; Matter of Heyman v Walsh, 137 Misc 278; 8A McQuillin, Municipal Corporations, § 25.230, p 137.)
No one would suggest that the deliberations of a Grand Jury or of a petit jury should be open to the press or public. The same considerations of policy should apply to the deliberations of a board of zoning appeals. The Legislature has recognized that the preservation of the privacy of this deliberative function is a legitimate limitation to be placed on the public’s right to know, and has included such proceedings in the exemptions set forth in section 98.
The court is therefore of the opinion that the board of zoning appeals may conduct its deliberations in private session.
*853 By the terms of section 24-44(d) of the Newburgh Code, the board of zoning appeals is required to conduct a public hearing on every appeal or application made to it. The code is silent as to whether the deliberations of the zoning board or the votes of its members shall be taken in public. While we are prepared to hold that a zoning board may retire in private session to conduct its deliberations, there is no necessity to extend this cloak of privacy beyond that point. Just as a petit jury is required to announce its decision publicly and, if polled, indicate publicly how each member of the jury voted, nothing less should be required of a board of zoning appeals.
Therefore, while a board of zoning appeals may, for the reasons hereinbefore set forth, conduct its deliberations in private session, the balance of its proceedings in which the vote of the individual members is taken officially and their decision rendered, must be open to the public.
Petitioner’s request "1” for a declaration that the New-burgh City Council and the Newburgh Zoning Board of Appeals are public bodies within the meaning of the Public Officers Law is hereby granted.
With respect to the other requests, it is the judgment of the court that the provisions of section 93 of the Public Officers Law do not apply to informal meetings of the City Council of the City of Newburgh which are not convened for the purpose of transacting public business officially, and it is the judgment of the court that the board of zoning appeals may conduct its deliberations in private session, but that part of its proceedings in which its decision is announced, and the vote of the individual members is taken, must be open to the public, as must all its other regular proceedings.
Except as herein previously granted, the remaining requests contained in the prayer for relief will be denied.