431 A.2d 308

Josephine T. URBANO, Roland J. Urbano, and
Nicholas Urbano, Appellants,

v.

James E. MENESES, Upper Merion Township, Arthur R. Cummins, Charles F. McCracken, John H. Morrell, Daniel L. Quinlan, Jr., Paul H. Unger, John R. Keefer, Joseph J. Kolbmann, Francis J. Toth and Daniel T. McIntyre.

Josephine T. URBANO, Roland J. Urbano, and
Nicholas Urbano,

v.

James E. MENESES, Upper Merion Township, Arthur R. Cummins, Charles F. McCracken, John H. Morrell, Daniel L. Quinlan, Jr., Paul H. Unger, John R. Keefer, Joseph J. Kolbmann, Francis J. Toth, and Daniel T. McIntyre.

Appeal of James E. MENESES and Daniel L. Quinlan, Jr., Cross-Appellants, Docket No. 2479 October Term, 1978.

Superior Court of Pennsylvania.

Argued March 22, 1979.

Filed June 19, 1981.

Joseph L. Torak, King of Prussia, for Urbano appellants (at No. 2400) and for appellees (at No. 2479).

Richard E. Reilly, King of Prussia, for Meneses and Quinlan, appellants (at No. 2479) and for appellees (at No. 2400).

Roger B. Reynolds, Norristown, for Unger et al., appellees.

Before CERCONE, President Judge, and WATKINS and HOFFMAN, JJ.

CERCONE, President Judge:

This case was initiated in equity by Josephine, Roland and Nicholas Urbano against Upper Merion Township, its zoning board and two of the Township's solicitors. The defendants

filed preliminary objections to the Urbanos' complaint. The court sustained the preliminary objections of the Township and of the individual zoning board members, saying that the complaint failed to state a cause of action against the Township and that the zoning board members were immune as high public officials. The court, however, overruled the objections of the defendant solicitors. From this decision, the Urbanos and the solicitors appeal. We conclude that the appeal of the solicitors is from an interlocutory order and must be quashed. Regarding the Township, we find that the court erred in holding that the complaint failed to state a cause of action. As for the individual members of the zoning board, we conclude that these individuals enjoy immunity, but not the immunity afforded high public officials but, rather, judicial immunity.

According to the record, this dispute between the Urbanos and the defendants has been going on for some time. The Urbanos own a combination grocery store and snack bar in Upper Merion Township. In April of 1961, the Urbanos applied for a zoning variance so that they might open a restaurant and truck stop. At that time Daniel L. Quinlan, Jr. was the Township Solicitor, and Arthur R. Cummins, Charles F. McCracken, and John H. Morrell were the individual members of the Board of Adjustment (the zoning board). The Board denied the variance and further said that the Urbanos did not enjoy a nonconforming use for a snack bar. After an appeal to the court of common pleas, it was ultimately held that the Urbanos did not enjoy a nonconforming restaurant use and the Board's other decisions were affirmed. According to the Urbanos, the members of the Board and the Board solicitor conspired to fraudulently deprive the Urbanos of the use of their property for lawful commercial purposes. The Urbanos further claim that for approximately ten years, Upper Merion Township, through its officials and agents, wilfully refused and neglected to review the Urbanos' case or to produce the records which would support the Urbanos' position.

During this ten year period, in 1962, the Township hired a new solicitor and the membership of the zoning board also changed. In 1962, James E. Meneses became the solicitor while Arthur R. Cummins, Charles F. McCracken, and Daniel T. McIntyre sat on the Board of Adjustment. According to the Urbanos, shortly before Meneses became the solicitor, he purchased a piece of real estate close to the Urbanos' grocery store. In August of 1962, the Urbanos asked for a variance on their property, which request was denied by the zoning board. A few months later, Meneses, as principal in a corporation, applied for a variance on his property. The solicitor excused himself from any consideration of this matter and the zoning board granted this variance. However, this decision of the zoning board's was subsequently reversed by the court of common pleas.

According to the Urbanos, on September 10, 1970, "certain Township records" were made available and it is alleged that these records "clearly established" fraud in the review of the Urbanos applications. The Urbanos filed the herewithin action with the equity court. As indicated previously, the lower court sustained the preliminary objections of the Township and of the individual zoning board members, but overruled the objections of the defendant solicitors. The Urbanos and the solicitors now appeal.

■■■ We first hold that the appeal of the township solicitors is from an interlocutory order and must be quashed. The order of the lower court, upon which these appeals rest, disposed of three matters. In the first and second part of its order, the court sustained the preliminary objections of the defendant Township and of the defendants who were members of the zoning board, and thus dismissed the Urbanos' complaint as it pertained to the Township and board members. In this respect, the lower court's order was final and appealable by the Urbanos. *Feingold v. Bell of Pennsylvania*, 477 Pa. 1, 383 A.2d 791 (1977) (The test for finality of an order is whether the order appealed from terminated the litigation between the parties or effectively deprives the litigant of his day in court.) However, as for

the defendant township solicitors; the lower court dismissed their preliminary objections, therefore, requiring them to go to trial, an order from which the solicitors appealed. Ordinarily, the dismissal of preliminary objections is an interlocutory order which is not appealable. Judicial Code, The Act of July 9, 1976, P.L. 586, No. 142, § 2, as amended April 28, 1978, P.L. 202, No. 53, § 10(58), 42 Pa.C.S. § 5105 (Supp. 1980); Pa.R.A.P. 311, 312, 341; *Matter of Phillips*, 471 Pa. 289, 370 A.2d 307 (1977); *Estate of Shelly*, 463 Pa. 430, 345 A.2d 596 (1975). An appeal will only lie from a final order unless otherwise permitted by statute. *Pugar v. Greco*, 483 Pa. 68, 394 A.2d 542 (1978); whenever possible, appellate review must await determination of suit notwithstanding any resulting inconvenience to a party. *Id.* Finality of an order exists when the practical effect of the order is to put the defendant out of court, *Bell v. Beneficial Consumer Discount Co.*, 465 Pa. 225, 348 A.2d 734 (1975), or otherwise terminate the litigation by prohibiting either party from proceeding with the action. *Marino Estate*, 440 Pa. 492, 269 A.2d 645 (1970); *Kramer v. Kramer*, 260 Pa.Super. 332, 394 A.2d 577 (1978).[1] Applying this test to the order of the lower court, it is, insofar as it concerns the township solicitors, interlocutory and not ripe for appeal. Therefore, the cross-appeal by the township solicitors must be quashed.

As for the members of the zoning board, we agree with the lower court that these individuals do enjoy immunity from suit but not as high public officials, which is the reason advanced by the equity court. Rather, we hold that in this type of matter, i. e., ruling on an individual application for a zoning permit, the members of the zoning board were acting in a judicial capacity and therefore should be afforded judicial immunity. The zoning board has a dual

---

1. All of the cases cited in this portion of our opinion were decided under the now repealed Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, Art. II, § 202, 17 P.S. § 211.202. Although this particular Act has since been repealed, it has been substantially re-enacted in relevant part by the Judicial Code, 42 Pa.C.S. § 5105 (Supp.1980), therefore the above cases are still viable for the cited propositions.

role, partly legislative, *Appeal of Silver,* 63 D&C2d 408 (1973); and partly "quasi-judicial." *Enik v. Lititz Borough,* 64 Lanc.Rev. 465 (1975); *Appeal of Silver, supra; Ashbourne School, Inc. v. Cheltenham Tp. Zoning Hearing Bd.,* 95 Montg. 356 (1975). The test to determine if a function is "quasi-judicial" is whether it involves the exercise of discretion and requires notice and a hearing. *VanPelt v. State Bd. for Community Colleges & Occupational Ed., Colo.,* 195 Colo. 316, 577 P.2d 765 (1978); *Coffey v. City of Milwaukee,* 74 Wis.2d 526, 247 N.W.2d 132 (1976). Courts in other jurisdictions have ruled that zoning boards are acting in a quasi-judicial function when they rule upon an application for a zoning permit for a particular piece of property (as contrasted with issuing general zoning laws). *Orange County Publications Division of Ottaway Newspapers, Inc. v. Council of City of Newburgh,* 89 Misc.2d 847, 393 N.Y.S.2d 298, 302 (1977); *Allison v. Washington County,* 24 Or.App. 571, 548 P.2d 188, 196 (1975); *Thiele v. Kennedy,* 18 Ill.App.3d 465, 309 N.E.2d 394, 396 (1974). Therefore, the members of the zoning board enjoy judicial immunity and have no legal responsibility in this case.

As for the Township itself, the lower court says the complaint states no valid cause of action against the Township. The equity court gives no reason for its conclusion. If the lower court is basing its decision upon a belief that the Township is immune from this lawsuit, then the court is in error. The Urbanos filed their claim against the Township on January 4, 1972. The filing and disposition of preliminary objections, for reasons which are not apparent from the record, took almost six years. In this six year period, between the filing of the Urbanos' complaint against the Township and the court's ultimate disposition of all pre-trial motions, the Supreme Court handed down its decision in *Ayala v. Phil. Bd. of Public Education,* 453 Pa. 584, 305 A.2d 877 (1973), in which the Court abolished the doctrine of governmental immunity which protected political subdivisions of the Commonwealth from tort liability. The Urbanos, whose complaint against the Township was pending

final disposition before the equity court when *Ayala* was decided, can rely on the *Ayala* decision in making out their cause of action against the Township. *See Gibson v. Commonwealth of Pennsylvania*, 490 Pa. 156, 165 n.5, 415 A.2d 80, 85 n.5 (1980).[2]

Furthermore, the Urbanos' cause of action against the Township was not affected by the Legislature's subsequent enactment of a statute designed to reinstitute the principles of governmental immunity in some cases, for the Legislature itself said: "Nothing in this act shall be construed to apply its provisions to any cause of action which arose or which would otherwise have arisen prior to such effective date had this act been in effect at such time."[3]  Additionally, the Supreme Court, in ruling on a comparable issue arising in connection with sovereign immunity of the state, said in no uncertain terms that "a legislature may not constitutionally eliminate *in toto* a remedy, whether judicially or legislatively created, which has already accrued." *Gibson v. Commonwealth of Pennsylvania, supra*, 490 Pa. at 162, 415 A.2d at 83 (1980).  Therefore, the doctrine of governmental immunity is not a bar to the Urbanos' cause of action and could not be used by the equity court as a basis for its ruling.

A government entity can only act through its employees. *Santiago v. City of Philadelphia*, 435 F.Supp. 136 (E.D.Pa. 1977).  As this Court wrote in a case raising the question of liability *vel non* of a municipality for the acts of an off-duty police officer:

> "A master is liable for the acts of his servant which are committed during the course of and within the scope of the servant's employment.  This liability of the employer may extend even to intentional or criminal acts committed by the servant.  Whether a person acted within the scope of employment is ordinarily a question for the jury." *Fitzgerald v. McCutcheon*, 270 Pa.Super. 102, 106, 410 A.2d 1270, 1271 (1979).

2. The *Gibson* case ruled on this same issue but in a situation involving the sovereign immunity doctrine.

3. Section 803 of the Act of November 26, 1978, P.L. 1399, No. 330.

Therefore, the question of whether the township solicitors were acting within the scope of their employment, if either solicitor is found to have acted culpably, is a question for the finder of fact. Therefore, we find that the trial court erred in summarily dismissing the cause of action against the Township.

Accordingly, the decision of equity court is affirmed as it pertains to the individual members of the zoning board and is reversed as it pertains to the Township. The appeal of the solicitors Quinlan and Meneses is quashed.

HOFFMAN, J., concurs in the result.

WATKINS, J., files a concurring and dissenting opinion.

WATKINS, Judge, concurring and dissenting:

I agree with that portion of the majority's opinion in which it holds that the court below was correct in dismissing the action filed against the members of the zoning board on the grounds that they enjoyed judicial immunity. I would, however, also dismiss the plaintiff's claim against the township and the solicitors.

The majority's decision permitting this case to proceed against the township while dismissing the action filed against the board members because they enjoy judicial immunity is akin to permitting a disgruntled party to a lawsuit to sue the Commonwealth of Pennsylvania because of the decision of one (or more) of its judges. Such a holding is illogical and serves no purpose other than to prolong this case needlessly. Despite *Ayala v. Philadelphia Board of Education*, 453 Pa. 584, 305 A.2d 877 (1973) and other cases abrogating sovereign immunity for local governments (and more recently the Commonwealth), I would hold that in this case the plaintiffs' have not made out a cause of action against the township since its only liability is through the acts of its zoning board members who enjoy judicial immunity or the solicitors, against whom plaintiffs' complaint is inadequate.

I also see no reason to hold that the solicitors' appeals must be quashed since it is clear that the plaintiffs' complaint is woefully deficient regarding their cause of action against the solicitors. Because of the peculiar posture of this case, in that the plaintiffs' are both appellants and appellees, I would "grab the bull by the horns" and decide the solicitors' appeal at this time as I believe that the court below was clearly incorrect in dismissing the preliminary objection of the solicitors.

The plaintiffs are individuals who had owned certain parcels of land located in Upper Merion Township, Montgomery County, Pennsylvania. On January 4, 1972, they instituted a complaint in Equity against Upper Merion Township, certain individuals who were past members of the Upper Merion Township Zoning Board of Adjustment and Zoning Hearing Board, and Daniel L. Quinlan, former solicitor for the township Board of Supervisors and Zoning Board of Adjustment and James E. Meneses, solicitor for both said entities since 1962. The defendants filed preliminary objections to said complaint alleging laches, the defense of statute of limitations, that the complaint failed to state a valid cause of action, and that the defendant enjoyed immunity from such suits. The court below upheld the preliminary objections of the defendant township and the former board members, but dismissed the preliminary objections of the defendants Quinlan and Meneses. The Court held that the former board members were immune from suit because they enjoyed the stature of high public officials, held that the complaint failed to state a cause of action against the township and therefore dismissed the complaint against it but dismissed the preliminary objections of the solicitors. The plaintiffs and the former solicitors appealed.

Plaintiffs' complaint contains 111 paragraphs and involves five separate counts alleging: 1. fraud committed by the Zoning Board of Adjustment in 1961 perpetrated by the issuance of a zoning decision adverse to the plaintiffs after the plaintiffs had filed an application requesting a special exception to permit them to expand a restaurant use; 2.

conspiracy committed between 1962 through 1964 by the defendants (except for defendant Quinlan, who was no longer solicitor) in denying plaintiffs' a variance by which the plaintiffs sought to replace three buildings of theirs for one new building to be used as a restaurant, office, and apartment despite the fact that the Board had granted a variance to construct an office building to a corporation in which defendant Meneses had an interest for a property adjacent to that of the plaintiffs; 3. interference with an advantageous business interest by the township and its solicitor Meneses in filing a complaint in equity against plaintiffs which resulted in a Court of Common Pleas decision ordering plaintiffs to remove an illegal structure; 4. fraud committed in 1968 and 1969 by the Zoning Board of Adjustment in refusing to grant certain applications to the plaintiffs which decision was subsequently affirmed by the Court of Common Pleas and the Commonwealth Court of Pennsylvania and; 5. condemnation by the township of plaintiffs' property alleged to have taken place over a ten year period by virtue of the various decisions of the Zoning Board adverse to plaintiffs.

Plaintiffs owned a building in an R2 residential zone which was used as a grocery store and luncheonette. Said building constituted a lawful non-conforming use. The difficulties began in 1961 when plaintiffs wanted to expand the luncheonette into a larger restaurant and their application was denied. What followed was a lengthy odyssey through the courts which proved to be a bumpy one for plaintiffs as the Zoning Board of Adjustment, the Court of Common Pleas of Montgomery County and the Commonwealth Court all ruled adversely to the plaintiffs on the various zoning issues disputed throughout the proceedings. On January 4, 1972, plaintiffs initiated the instant five count action against defendants alleging estimated damages of $281,000. After the lower court's rulings on the various preliminary objections filed by the defendants, the instant appeals were taken to this Court.

The township solicitors (Quinlan and Meneses) argue that since the court below dismissed the plaintiffs action against the former Board members on the grounds that said Board members were "high public officials" that the action against them should have been dismissed for the same reason. The office of solicitor of a municipality is provided by statute and is an office with specifically defined powers and duties. See *53 P.S. 65580, 65581, 65582* relating to the office of township solicitor. Their duties include advising the municipality or municipal entity on legal matters. As such municipal solicitors stand in an attorney-client relationship to the municipal entity which retains them. Generally, an attorney is not liable to third persons for the tortious conduct of a client. *7 C.J.S. § 52 Attorney and Client* p. 834. Thus, under the general rule a municipal solicitor cannot be held liable for acts committed by municipal office holders as it is the office holder, and not the attorney, who has the authority to make the final decisions on municipal matters and the solicitor's role is limited to an advisory one. A solicitor's advice may be accepted or rejected by the municipal office holder. His duty, however, is to the entity which retains him not to be the public at large or to persons who stand in an adverse relationship to the municipal entity.

However, an attorney is personally liable to a third party when he is guilty of fraud, collusion, or a malicious or tortious act himself and he is liable when he encourages and induces another to commit a trespass. *Adelman v. Rosenbaum*, 133 Pa.Super. 386, 3 A.2d 15 (1938).

Thus, it is clear that in order to be held liable to persons who have dealings with a municipal entity, the municipal solicitor must have engaged in a course of conduct amounting to fraud and manifesting malice towards the party adversely affected by the municipality's decision. An important public policy is served by strictly limiting the circumstances under which a municipal solicitor, or any attorney representing any client for that matter, may be held personally responsible for the actions of his client. The Sixth Amendment to the United States Constitution recognizes

the importance of the right to counsel. It is important, to foster a client's confidence in his attorney by providing a framework in which the client is assured that his attorney is acting in his (the client's) best interests in providing legal advice rather than undermining that confidence by creating situations in which the attorney's concern is elsewhere (e. g. in attempting to protect himself from third party claims). In the latter case the client's interests are at least partially subverted by the attorney's concerns about being sued by the party with which his client is dealing. Such a situation, of course, works against the client's best interests and is repugnant to our common law tradition. Considering the complexity of modern times it is more important than ever that clients feel free to consult their attorneys for legal advice unencumbered by the fear that the attorney's position may be compromised by his own fear of being held liable to third parties for his advice. This is no less true in matters involving municipalities and their solicitors, especially in light of *Ayala v. Philadelphia Board of Education*, 453 Pa. 584, 305 A.2d 877 (1973) wherein the concept of local government's immunity from suit previously enjoyed by municipal governments, was abrogated.

In the instant case, the plaintiffs have indeed alleged malice and fraud on the part of the solicitors. The malice and fraud alleged by plaintiffs on the part of defendant Meneses was in preparing a legal decision, including "findings of fact", "discussion", and the decision of the Board of Adjustment denying plaintiffs' request for permission to make significant changes to these buildings. It is alleged that Meneses' motive for this was that he had an interest in an adjacent parcel which also had sought a variance with respect to the parcel of land. It should be noted that Meneses excused himself from advising the Board with respect to the adjacent parcel, the variance was granted for that parcel by a two to one vote of the Board, but that on appeal the Court of Common Pleas reversed the Board's decision and denied the variance sought by plaintiffs' neighbor. (Thus, even if everything alleged by plaintiffs regard-

ing malice is accurate it appears that the decision denying plaintiffs' requests for a variance was correct as the other applicants were also ultimately refused a variance). Plaintiffs also allege malice by the solicitors for withholding certain information from plaintiffs and for making certain representations in preparing formal decisions which the plaintiffs claim were untrue. However, plaintiffs never clearly set forth what facts they allege to be untrue. Rather it appears that plaintiffs are actually quibbling with the conclusions reached by the Board in denying the various applications made by the plaintiffs to the Board. As such I would hold that the township solicitors, in preparing formal decisions for a Zoning Board of Adjustment which they represent, are immune from suits brought by persons adversely affected by such decisions. This is true even if those decisions later prove to be erroneous. This immunity is a type of judicial immunity enjoyed by judges while acting in their official capacities.

The doctrine of judicial immunity was first adopted by the United States Supreme Court in *Randall v. Brigham*, 74 U.S. 523, 19 L.Ed. 285 (1868) and *Bradley v. Fisher*, 80 U.S. 335, 20 L.Ed. 646 (1891). In *Randall*, supra, the Court stated that: "Unless judges, in administering justice, are uninfluenced by considerations personal to themselves, they can afford little protection to the citizen in his person or property." The court went on to point out that they cannot be uninfluenced by personal considerations if "they may be subjected to prosecution at the instance of every party imagining himself aggrieved, and called upon in a civil action in another tribunal . . . to vindicate their acts." A Zoning Board solicitor, in preparing a formal decision of the Zoning Board, is similarly protected by immunity from suit as his duties in preparing the decision are similar to those of the judiciary and the public policy reasons set forth above apply equally to him. Thus, I would hold that the solicitors enjoy immunity from suit for what appears in their formal decisions.

My analysis would not end here, however, because the plaintiffs have alleged malice on the part of solicitors as discussed above. Judicial immunity does not extend to malicious acts done by persons who would otherwise be immune from suit. See *Randall v. Brigham,* supra. Although plaintiffs do allege malice in their complaint they cite no facts in their complaint tending to support that conclusion and a mere bald allegation of malice is insufficient to overcome the presumption of immunity enjoyed by municipal solicitors in performing acts within the scope of their normal duties. A reading of the complaint suggests that plaintiffs' allegation of malice on the part of the solicitors is confined to the part the solicitors' played in rendering the formal decisions of the Zoning Board. This is not sufficient to show any "extra-judicial" or "malicious" behavior on the part of Quinlan or Meneses. Therefore, I would reverse the lower court's dismissal of the solicitors' preliminary objections because (1) the solicitors merely had the power to advise and could not decide these matter themselves and, as such, stood in an attorney-client relationship with the Zoning Board and therefore cannot be liable to third parties in the absence of malice and (2) in preparing formal decisions for their clients (the zoning board) the solicitors enjoyed a type of judicial immunity extended to judges and other official bodies established to arbitrate disputes among conflicting interests and (3) the plaintiffs' complaint does not meet the requirements of showing extra-judicial or malicious conduct since it merely makes a bald allegation of malice.

Turning to plaintiffs' appeal from the court's decision granting the other defendants preliminary objections I note that the reason advanced for that decision by the court below was that the Board members enjoyed immunity as high public officials. Plaintiffs cite the case of *DuBree v. Commonwealth of Pennsylvania, et al.,* 481 Pa. 540, 393 A.2d 293 (1978) wherein the court held that seven named officials of the State Department of Transportation did not enjoy official immunity from a wrongful death suit brought against them by the survivor of a person killed due to an

allegedly defective excavation (10 feet deep and unmarked) on a state highway. The distinction between *DuBree* and our case is that in our case the township and zoning board members are being sued because of a decision made in a quasi-judicial capacity while in *DuBree,* no such status was enjoyed by the defendants. In *DuBree,* supra, the court stated:

> "In order to discharge his duties effectively, a public servant must be free to exercise his judgment unhampered by the fear of unpredictable liability. Where the nature of the servant's decision or action in question is such that it may not be measured against a predictable standard of care, the possibility of litigation may tend to discourage the making of clear choices. It is in the public interest to avoid such a chilling effect upon the servant's performance of his duties."

The court then goes on to discuss the situations where the public servant's actions may be measured by a predictable standard of care and holds that in such situations the need for official immunity is weakened.

In our case the judgments exercised by the public officials were quasi-judicial in nature and could not conceivably be measured against a standard of care sufficiently predictable so as to avoid the "chilling effect" discussed in *DuBree* if said officials were subject to suit as a result of their decisions. Therefore, the public policy reasons set forth in *Randall v. Brigham,* and *Bradley v. Fisher,* supra, command a different result than that reached by the Court in *DuBree,* supra. As such I agree that the Zoning Board members did enjoy judicial immunity in the exercise of their duties in deciding the merits of plaintiffs' zoning applications. I would not hold that members of zoning boards can never be sued personally as a result of their official actions. Unlike the solicitors the board members do have the ultimate authority to render binding decisions. In the event that they would exercise their authority maliciously, arbitrarily, capriciously or with a corrupt motive then I would hold that they may be sued personally by persons adversely affected by their decisions. Personality conflicts or differences, ancient

or recent grudges, or, personal hatreds or dislikes should play no part in a zoning board's decisions as the members of such a board hold great power over people's uses of their properties and therefore, their lives. Such awesome power must be exercised rationally and devoid of any malice of bad faith. Thus, while zoning board officials do enjoy a type of judicial immunity in exercising official duties, I would hold that they may waive their immunity by acting maliciously, arbitrarily or in bad faith. In the instant case the record reveals formal decisions by the Board which are reasoned and detailed. The record also reveals that the Board gave considerable time and attention to the various applications of the plaintiffs, did not reject plaintiffs applications out-of-hand (which would be an indication of arbitrary action or action performed in bad faith), and provided plaintiffs with hearings and opportunities to make their case. Whether or not the defendants' decisions were correct is not the determining factor (although said decisions were affirmed in the instances where they were appealed). The determining factor is whether plaintiff's bald allegations of "malice" are supported by the record. They are not. Therefore, I agree that the decision of the court below granting the preliminary objections of the Board members is correct. I would also dismiss the complaint against the Township and the solicitors.