

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-25-1999

# Omnipoint Corp v. Zoning Hearing Bd

Precedential or Non-Precedential:

Docket 98-1962

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

## Recommended Citation

"Omnipoint Corp v. Zoning Hearing Bd" (1999). *1999 Decisions.* Paper 166.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/166

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed June 25, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-1962

OMNIPOINT CORPORATION; LINDA GENTH

v.

ZONING HEARING BOARD OF PINE GROVE TOWNSHIP;
BOB PANKAKE, in his capacity as zoning officer
for Pine Grove Township

  Zoning Hearing Board of Pine Grove
  Township, Schuylkill County, Pennsylvania
  and Bob Pankake,
  Appellants

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 97-cv-07088
(Honorable Franklin S. Van Antwerpen)

Argued April 29, 1999

Before: SCIRICA, ROTH and McKAY,*
Circuit Judges

(Filed: June 25, 1999)

_____

*The Honorable Monroe G. McKay, United States Circuit Judge for the
Tenth Judicial Circuit, sitting by designation.

L. ROSTAING THARAUD, ESQUIRE
 (ARGUED)
Marshall, Dennehey, Warner,
 Coleman & Goggin
1845 Walnut Street
Philadelphia, Pennsylvania 19103

 Attorney for Appellants

LINUS E. FENICLE, ESQUIRE
 (ARGUED)
Reager & Adler
2331 Market Street
Camp Hill, Pennsylvania 17011

 Attorney for Appellees

OPINION OF THE COURT

SCIRICA, Circuit Judge.

In this case brought under the Telecommunications Act of 1996, P.L. 104-104, 110 Stat. 56 (codified in scattered sections of 15 and 47 U.S.C.), the issue is whether the District Court properly found that the denial of a special exception under the Pennsylvania Municipalities Planning Code, Pa. Stat. Ann., tit. 53, S 10909.1(6) (West 1997), to build a tower for transmission of wireless telephone signals was not supported by substantial evidence as required by the Telecommunications Act S 704(a), 47 U.S.C.A. S 332(c)(7)(B)(iii) (West Supp. 1999). We will affirm.

I

On June 30, 1997, Omnipoint, a major wireless telephone service provider,1 applied to the Zoning Hearing

_____

1. "Although often called `cellular' telephone service, several different technologies compete. Omnipoint uses a high frequency, digital system called personal communication service, or `PCS.' Almost all systems employ hand-held telephone sets communicating by radio with antennas strategically located on towers or buildings; each antenna is connected eventually to the land-line telephone network." Town of Amherst, N.H. v. Omnipoint Communications Enters., Inc., 173 F.3d 9, 10 n.1 (1st Cir. 1999).

2

Board of Pine Grove Township in Schuylkill County, Pennsylvania for a special exception permitting Omnipoint to build a 114-foot monopole2 on property located in a sparsely populated, mountainous region of the township. The Board held hearings on Omnipoint's application on August 14, 1997 and September 11, 1997. At the hearings, Omnipoint was represented by Lee Woodmansee of JM Consulting Group, who testified the proposed site "is surrounded by large 80, 90 foot trees, in my estimation" and therefore that the monopole would "probably" be visible only to neighbors more than 600 feet away. Woodmansee estimated that the nearest neighbor's residence was 500 feet from the proposed site. Although Woodmansee believed there were studies generally showing no adverse effect of towers such as the proposed monopole on the values of adjoining properties, JM Consulting had conducted no study in this instance. Several local residents questioned Woodmansee about the visibility of the tower, its effects on property values, and especially health threats associated with its radio emissions. David Ravegun, a neighboring property owner, testified that he estimated the trees in the area to be approximately 60 feet in height. As a result, he believed the tower would be visible from his property, especially in winter, and therefore would hurt his property value. He also testified, allegedly on the basis of a classified report to which he had access, that the tower's high intensity radio transmissions would be harmful to neighbors' health. Ten other neighboring property owners represented they would offer testimony substantially similar to Ravegun's.

On October 21, 1997, the Board denied Omnipoint's requested exception because "a) no studies were done on the effect of adjoining land owners [sic] property values; b) the burden of proof with respect to the proposed structure not adversely effecting [sic] the general character of the neighborhood was not met." Omnipoint then brought this

_____

2. A monopole is a telecommunications tower used to transmit wireless telephone signals. Ordinarily, Omnipoint, like other wireless telephone providers, sites its transmitters on existing structures. In such locations,
the transmitters are almost invisible. Where no suitable pre-existing structures are available, a tower is built.

action alleging the Board's denial of the special exception violated the Telecommunications Act. The parties agreed to a non-jury trial based on a written record that included an extensive stipulation of undisputed facts. On September 16, 1998, the District Court found the Board's decision had not been based on substantial evidence because, first, the evidence before the Board did not establish the detrimental effect of the proposed tower with a "high degree of probability" as required by Pennsylvania law; and second, the decision was based on aesthetic considerations and a desire to preserve property values, factors the District Court held cannot justify denial of a special exception under Pennsylvania law. Omnipoint Corp. v. Zoning Hearing Bd., 20 F. Supp. 2d 875, 878-80 (E.D. Pa. 1998). The District Court ordered the Board to issue the special exception, see id. at 881-82, and the Board now appeals.

II

Congress enacted the Telecommunications Act3 "to
_____

3. The Telecommunications Act of 1996 S 704(a), 47 U.S.C.A. S 332(c)(7) provides in relevant part,

    (A) General Authority

     Except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities.

    (B) Limitations

     (i) The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof--

    (I) shall not unreasonably discriminate among providers of functionally equivalent services; and

    (II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

    . . . .

    (iii) Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal

provide for a pro competitive, de-regulatory national policy framework designed to accelerate rapidly private-sector deployment of advanced telecommunications and information technologies and services to all Americans by opening all telecommunications markets to competition . . . ." H.R. Conf. Rep. No. 104-458, at 113 (1996), reprinted in 1996 U.S.C.C.A.N. 124, 124. Among the telecommunications technologies addressed was wireless telephone service. Congress found that "siting and zoning decisions by non-federal units of government[ ] have created an inconsistent and, at times, conflicting patchwork of requirements which will inhibit the deployment of Personal Communications Services as well as the rebuilding of a digital technology-based cellular telecommunications network." H.R. Rep. 104-204, at 94 (1995), reprinted in 1996 U.S.C.C.A.N. 10, 61. But Congress also "recognize[d] that there are legitimate State and local concerns involved in regulating the siting of such facilities . . ., such as aesthetic values and the costs associated with the use and maintenance of public rights-of-way." Id. at 94-95, reprinted in 1996 U.S.C.C.A.N. at 61. The House version of the Act would have required the FCC to regulate the siting of wireless telephone transmitters, but the Conference Committee instead enacted S 332(c)(7) to "preserve the authority of State and local governments over zoning and land use matters except in . . . limited circumstances . . . ." H.R. Conf. Rep. No. 104-458, at 207-08, reprinted in 1996

_____

      wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.

      (iv) No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the [FCC]'s regulations concerning such emissions.

      (v) Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within thirty days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis.

5

U.S.C.C.A.N. at 222. As the First Circuit noted, section 332(c)(7) "is a deliberate compromise between two competing aims--to facilitate nationally the growth of wireless telephone service and to maintain substantial local control over siting of towers." Town of Amherst, N.H. v. Omnipoint Communications Enters., Inc., 173 F.3d 9, 13 (1st Cir. 1999).

Subsection 332(c)(7) provides for local regulation of the placement of wireless telephone transmission equipment, with certain statutory limitations: Local zoning authorities may not discriminate among providers of wireless telephone service, see S 332(c)(7)(B)(i)(I), act in a manner that effectively prohibits the provision of wireless telephone services, see S 332(c)(7)(B)(i)(II), or make zoning decisions based on concerns over the environmental or health effects of the radio emissions associated with wireless telephone service, see S 332(c)(7)(B)(iv); Cellular Telephone Co. v. Town of Oyster Bay, 166 F.3d 490, 494 & n.3 (2d Cir. 1999). In addition, a zoning board's decision to deny permission to build a wireless service facility must be "in writing and supported by substantial evidence contained in a written record." S 332(c)(7)(B)(iii). If a zoning board violates these statutory requirements, S 332(c)(7)(B)(v) gives the adversely affected party a cause of action, which is to be decided "on an expedited basis."

Omnipoint has brought this suit under S 332(c)(7)(B)(v), maintaining that the Board's decision was not supported by substantial evidence as required by S 332(c)(7)(B)(iii). The District Court had original federal question jurisdiction under 28 U.S.C.A. S 1331 (West 1993). We have appellate jurisdiction over the District Court's final order under 28 U.S.C.A. S 1291 (West 1993).

III

Because "substantial evidence" is a legal term of art, we presume Congress intended to adopt the term's ordinary legal meaning. See McDermott Intern., Inc. v. Wilander, 498 U.S. 337, 342 (1991). Here, the Conference Committee confirmed that it intended the courts to review zoning decisions under the same standard applied to federal

6

administrative decisions. See H.R. Conf. Rep. No. 104-458, at 208, reprinted in 1996 U.S.C.C.A.N. at 223. Substantial evidence is not "a large or considerable amount of evidence, but rather `such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). In determining whether the evidence before an agency was substantial, a court views the record in its entirety and takes account of evidence unfavorable to the agency's decision. See American Textile Mfr. Inst., Inc. v. Donovan, 452 U.S. 490, 523 (1981). We apply the same standard as the District Court. See Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994) (review of disability benefit decisions under 42 U.S.C. S 405(g)).

Subject to the substantive limitations described supra, "[t]he substantial evidence test applies to the locality's own zoning requirements." Amherst v. Omnipoint, 173 F.3d at 16. The Board contends the special exception was denied for aesthetic reasons and to protect the values of neighboring properties. Such considerations are sufficient to support the denial of a special exception under Pennsylvania law4 and are consistent with Congress' intent to allow localities to accommodate traditional zoning considerations in siting wireless telephone transmitters. The question, therefore, is whether the Board had before it substantial evidence that the proposed special exception

_____

4. The Pennsylvania Municipalities Planning Code authorizes local zoning ordinances to specify the standards governing requests for special exceptions. See Pa. Stat. Ann., tit. 53,S 10912.1 (West 1997). Aesthetics and concern for property values may be included in these standards. See Berk v. Wilkinsburg Zoning Hearing Bd., 410 A.2d 904, 905-06 (Pa. Commw. Ct. 1980). Pine Grove Township Zoning Ordinance S 902(3)(c) requires that a proposed exception "not adversely affect the character of the general neighborhood, nor the conservation of property values, nor the health and safety of residents or workers on adjacent properties and in the general neighborhood, nor the reasonable use of neighboring properties. The use of adjacent properties shall be adequately safeguarded." This language encompasses the grounds on which the Board defends its decision.

would cause deterioration to the aesthetic character of the area or to neighboring property values.5

The Board relies heavily on AT&T Wireless PCS, Inc. v. City Council, 155 F.3d 423 (4th Cir. 1998), where the court affirmed the city council's denial of a conditional use permit to build two 135-foot wireless telephone transmission towers based on considerable community opposition. The Court of Appeals for the Fourth Circuit stressed the legislative nature of the city council:

> The Virginia Beach City Council is a state legislative body, not a federal administrative agency. . . . It is not only proper but even expected that a legislature and its members will consider the views of their constituents to be particularly compelling forms of evidence, in zoning as in all other legislative matters. These views, if widely shared, will often trump those of bureaucrats or experts in the minds of reasonable legislators.

Id. at 430. On the other hand, the Court Appeals for the Seventh Circuit characterized zoning permit decisions as primarily administrative in nature:

> [T]rue as the AT & T Wireless observation may be about legislators, it overlooks the fact that municipal councils often wear several hats when they act. When they are passing ordinances or other laws, they are without a doubt legislators, but when they sit as an administrative body making decisions about zoning permits, they are like any other agency the state has created. We therefore apply the conventional substantial evidence standard to the case before us.

---

5. Omnipoint argues that opponents of the exception did not meet the evidentiary burden required by Pennsylvania law. But we agree with the Board that the Telecommunications Act does not authorize general appeals in federal court of state zoning decisions. The question before us is whether the Board's decision was supported by substantial evidence-- the evidentiary burden specified in the Telecommunications Act. See Aegerter v. City of Delafied, 174 F.3d 886, ___, 1999 WL 225310, at *2- *4 (7th Cir. 1999); Cellular Telephone, 166 F.3d at 494-97 (both applying the substantial evidence requirement of S 332(c)(7)(B)(iii) without regard to state law evidentiary burdens).

Aegerter v. City of Delafied, 174 F.3d 886, ___, 1999 WL 225310, at *3 (7th Cir. 1999). The Zoning Hearing Board of Pine Grove Township described itself as a "quasi-judicial body" in the Joint Statement of Undisputed Facts. Under Pennsylvania law, "[t]he zoning board has a dual role, partly legislative and partly quasi-judicial." Urbano v. Meneses, 431 A.2d 308, 311 (Pa. Super. Ct. 1981) (internal quotation marks and citations omitted). The Urbano court summarized with approval decisions in other states holding that "zoning boards are acting in a quasi-judicial function when they rule upon an application for a zoning permit for a particular piece of property . . . ." Id. ; see also Norate Corp. v. Zoning Bd. of Adjustment, 207 A.2d 890, 893 (Pa. 1965) (referring to a zoning board as "a quasi-judicial body"); Hill v. Zoning Hearing Bd., 597 A.2d 1245, 1248 (Pa. Commw. Ct. 1991) (describing zoning boards as administrative in nature); Huebner v. Phila. Sav. Fund Soc'y, 192 A. 139, 142 (Pa. Super. Ct. 1937) (same). Because the Zoning Hearing Board acted in a quasi-judicial capacity when it denied Omnipoint's application, we apply the substantial evidence standard as we would to the decision of a federal administrative body.

In AT&T Wireless, "numerous area residents" spoke against the permit application and the council received petitions, also in opposition, bearing almost 800 signatures. 155 F.3d at 425. The protestants argued primarily that two 135-foot towers would be "eyesores" if erected in "a heavily wooded residential neighborhood with no significant commercial development, no commercial antenna towers, and no above-ground power lines." Id. at 425, 424. Here, the District Court found that "any claims asserted by protestants were at best very general and speculative[,]" Omnipoint v. Zoning Hearing Bd., 20 F. Supp. 2d at 880, and we agree. Eleven neighbors asserted that the monopole would be visible over the tree line and would damage their property values. But Ravegun, who spoke for all eleven neighbors, addressed the visibility of the tower only briefly and presented no evidence regarding property values. Ravegun's comments and the questions that he and other residents asked of Woodmansee focused more on alleged health effects, which the Board may not consider under S 332(c)(7)(B)(iii), than on aesthetic considerations or

property values. As the Court of Appeals for the Second Circuit held, a "few generalized expressions of concern with `aesthetics' cannot serve as substantial evidence" for purposes of S 332(c)(7)(B)(iii) and, similarly, "[a] few generalized concerns about a potential decrease in property values, especially in light of [the plaintiff]'s contradictory expert testimony, does not seem adequate to support a conclusion that the permits should be denied." Cellular Telephone, 166 F.3d at 496 (2d Cir. 1999) (internal quotation marks omitted).

Because the Board's denial of the exception was not based on substantial evidence, the District Court properly ruled that the Board's decision violated the Telecommunications Act.

IV

The Board also contends that the District Court should have remanded the case to the Zoning Hearing Board rather than ordering the exception issued. We generally review a district court's choice of equitable remedy for abuse of discretion, provided the remedy ordered is permitted by the governing law. See Castrol, Inc. v. Pennzoil, Co., 987 F.2d 939, 943 (3d Cir. 1993); Voest-Alpine Trading USA Corp. v. Vantage Steel Corp., 919 F.2d 206, 211 (3d Cir. 1990). Injunctions are proper forms of relief under S 332(c)(7)(B)(v), see Cellular Telephone, 166 F.3d at 497, and the Board has not suggested any purpose that would be served by remand. We see no abuse of discretion here. Cf. Allen v. Bowen, 881 F.2d 37, 43-44 (3d Cir. 1989) (refusing Secretary of Health and Human Services' request for a remand to allow further development of the record after a finding that the Secretary's decision had not been supported by substantial evidence, in part because"there is no good cause for the Secretary's failure to adduce all the relevant evidence in the prior proceeding").

V

For the reasons given, we will affirm the judgment.

10

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit