479 A.2d 500

**TEMTEX PRODUCTS, INC.,**

v.

**John W. KRAMER, Sr., Appellant,**

**Deanne L. Oberdick, Appellant,**

**Remarkable Enterprises of York, Inc., Stan Mail, Inc., Wallace Associates, Inc., Brenda L. Wintermeyer, Edward Roberts, Linda M. Wike, and Awareness Mission of Scientology.**

Superior Court of Pennsylvania.

Argued July 12, 1983.

Filed June 8, 1984.

Petition for Allowance of Appeal Denied Oct. 18, 1984.

184

Gerald E. Ruth, York, for appellant (at No. 117) and for appellee (at Nos. 119 and 143).

David R. Dearden, Philadelphia, for appellant (at No. 143) for appellee (at Nos. 117 and 119).

John D. MacVeigh, Philadelphia, for appellant (at No. 119) and appellee (at Nos. 117 and 143).

Before CERCONE, President Judge, and ROWLEY and WIEAND, JJ.

ROWLEY, Judge:

These are three consolidated appeals from two orders of the trial court issued on March 23, 1983. One of the appeals is interlocutory and will therefore be quashed. In the second appeal, we affirm the order of the trial court. In the third appeal, we reverse the orders of the trial court and remand for further proceedings.

On August 16, 1982, Temtex Products, Inc. (Temtex), a Texas corporation with offices in Nashville, Tennessee, filed, in York County, Pennsylvania, a complaint in equity alleging that the defendants had participated in a fraudulent transfer of assets formerly owned by John W. Kramer, Sr. (Kramer), in violation of the Pennsylvania Uniform Fraudulent Conveyances Act (UFCA), Act of May 21, 1921, P.L. 1045, No. 379, §§ 1 et seq., 39 P.S. §§ 351 et seq. On August 30, 1982, Temtex filed a motion for a preliminary injunction requesting the court to (1) enjoin the defendants from conveying or encumbering the assets specified in the complaint, (2) order certain assets to be reconveyed to Kramer, and (3) direct that payments due from some of the defendants be paid into court pending the final outcome of the case. In compliance with Pa.R.C.P. No. 1531(b)(1), Temtex offered to post a bond in an amount sufficient to compensate any person damaged by reason of the improper granting of the injunction. A hearing on the motion was scheduled for "as soon as counsel can be heard." Although it is unclear when this "hearing" was held, it appears that no testimony was offered but the parties presented legal

arguments based upon the complaint, the motion, and an affidavit attached to the motion.

On September 7, 1982, two of the defendants, Wallace Associates, Inc. (Wallace), described in the complaint as "a partnership," and Stan Mail, Inc. (Stan Mail), a Pennsylvania corporation, filed preliminary objections to the complaint in the nature of a demurrer claiming that Temtex had failed to state a cause of action against them and that they were not proper parties to the action. On September 10, 1982, Deanne L. Oberdick (Oberdick), a Pennsylvania resident, filed preliminary objections (1) in the nature of a demurrer asserting that Temtex had failed to state a cause of action against her; (2) a motion to strike the complaint for improperly pleading legal conclusions, not pleading facts, and failing to attach writings on which the complaint was based; and (3) a motion for a more specific pleading. On October 19, 1982, Kramer, Brenda L. Wintermeyer (Wintermeyer) and the Awareness Mission of Scientology (Mission), a California non-profit corporation, filed preliminary objections contesting the propriety of the trial court's exercise of *in personam* jurisdiction as to them. Temtex filed answers to the preliminary objections, denying the material averments in each. The parties also supplied the trial court with numerous legal memorandums.

On March 23, 1983, the trial court issued two orders, each accompanied by an opinion. In the first decision, addressed to the preliminary objections, the court concluded that (1) it could exercise personal jurisdiction over Kramer and dismissed his preliminary objections; (2) it could not properly exercise jurisdiction over Wintermeyer, the Mission, *and Linda M. Wike;* [1] the court sustained their preliminary

1. No preliminary objection raising the question of *in personam* jurisdiction was filed on behalf of Appellee Wike. The preliminary objection filed named only Appellant Kramer and Appellees Wintermeyer and Awareness Mission. As set forth above, however, the court ruled that it could not exercise jurisdiction as to her. Temtex has not raised this defect as a ground for reversing the trial court's order. Moreover, Wike has entered an appearance before this court and was represented by counsel who took part in oral argument and filed a brief on her behalf. We therefore conclude that the omission of her

objections and dismissed the complaint as to them; (3) a cause of action had been adequately stated under the UFCA as to Oberdick and dismissed her preliminary objections; and (4) no cause of action had been stated against Wallace and Stan Mail. In the second opinion and order, addressed to the request of Temtex for a preliminary injunction, the court determined that, as to the defendants remaining in the action, Temtex had not shown that it was entitled to a preliminary or special injunction and denied Temtex's motion. Oberdick, Kramer and Temtex appealed. We shall address each appeal in turn.

### I—No. 117

■ Deanne L. Oberdick has appealed from the order denying her preliminary objections in the nature of a demurrer, a motion to strike and for a more specific pleading. Unless an order falls within a specific exception created by statute, *see* 42 Pa.C.S.A. §§ 702, 5105(c), or by general rule, *see* Pa.R.A.P. 311, 312 and 1301 et seq., this court may entertain an appeal only if the order appealed from is final. 42 Pa.C.S.A. § 742. Appellant does not invoke any exception to the general rule but rather asserts that the order of March 23, as it relates to her, is a final order within § 742 and is therefore immediately appealable. Brief for Appellant Oberdick at 1.

■ We disagree. An order is final when the practical effect of the order is to put the appellant out of court, *Bell v. Beneficial Consumer Discount Co.*, 465 Pa. 225, 348 A.2d 734 (1975), or otherwise terminate the litigation by precluding a party from presenting the merits of a claim or defense to the trial court. *Gordon v. Gordon*, 293 Pa.Super. 491, 439 A.2d 683 (1981). Appellant has not argued that any of the three determinations of the trial court have in any way impaired her ability to defend on the merits. Moreover, orders denying preliminary objections are ordinarily interlocutory and not appealable for such orders do

name from the preliminary objections filed on behalf of Kramer, Wintermeyer and the Mission was an oversight.

no more than require the case to proceed to trial on the merits. *Urbano v. Meneses,* 288 Pa.Super. 103, 431 A.2d 308 (1981). We therefore conclude that Oberdick's appeal is interlocutory and must be quashed.

## II—No. 143

▮▮▮ Temtex Products, Inc., has appealed from those parts of the orders of March 23, 1983, in which the trial court (1) dismissed the complaint as to Wintermeyer, Wike and the Mission for lack of *in personam* jurisdiction as to them, and (2) denied Temtex's request for a preliminary injunction. Temtex properly asserts that the first determination is a final and appealable order for it puts Temtex out of court as to the named defendants. Temtex also properly invokes our jurisdiction as to the latter determination for orders denying preliminary injunctions are immediately appealable. Pa.R.A.P. 311(a)(4). We shall discuss each of these determinations separately.

## A.

▮▮▮ When, as here, a defendant properly raises an objection on the ground of a lack of *in personam* jurisdiction, the plaintiff has the burden of proving that the exercise of jurisdiction is permissible. *Crompton v. Park Ward Motors,* 299 Pa.Super. 40, 42, 445 A.2d 137, 138 (1982). In this case, the record includes the pleadings, the motion for a preliminary injunction, exhibits attached to these documents and an affidavit of Larry Smith, Assistant Secretary of Temtex Products, Inc. In reviewing the determination of the trial court, we review these materials and accept as true all of the facts as set forth therein. *Id.* So construed, these materials reveal the following "facts".

Temtex and Kramer, a former York County resident, entered into an unexplained transaction in May, 1978, in which Temtex extended to Kramer a substantial amount of credit. This extension of credit was based, in part, on a statement of net worth that listed some or all of Kramer's assets. In April, 1980, Temtex instituted suit against

Kramer in Tennessee. That suit resulted in judgment being entered in favor of Temtex in Tennessee in March, 1981, in the amount of $210,408.55 plus interest at the rate of eight percent per year. On November 23, 1981, the Tennessee judgment was entered in the Court of Common Pleas of York County, Pennsylvania.

Temtex has alleged that seven of the nine named defendants have participated in a fraudulent attempt to convey at least one of three specified assets that had previously been listed on Kramer's statement of net worth, that these fraudulent conveyances were not supported by "fair consideration" within the meaning of the UFCA, 39 P.S. § 353, and that the conveyances were therefore fraudulent as to it. The conveyances are alleged to have taken place in the following manner.

*First Conveyance:* One asset listed by Kramer on his "statement of net worth" was a parcel of real estate in York County designated as "Springettsbury-Mailman." Legal title to this property was in one Stanley Mailman as trustee for an entity designated as the "February 15, 1969, Partnership" and its value was estimated at $69,000.00. Kramer and Mailman were partners in the named partnership. On December 7, 1978, after Kramer had submitted his statement of net worth to Temtex, Kramer transferred his thirty percent interest in the partnership to Deanne L. Oberdick in consideration of the payment of $1.00. Kramer and Oberdick were apparently in Florida at the time of the execution of the assignment. The acknowledgement appended to the assignment was notarized by Linda M. Wike, a notary public in the State of Florida.

Temtex has alleged that Kramer, in making the transfer, acted "with the intent to defraud his creditors and render himself insolvent ... in order to prevent the assets of the partnership from being applied to his debts." Complaint at ¶¶ 16–17. It is also alleged that Oberdick did not pay a fair consideration for the transfer. The assignment was recorded in the office of the York County Registry of Deeds on December 31, 1978 or 1979, the date on the exhibit not

being clear. Temtex has also alleged that, despite the formal adequacy of this assignment, Kramer "continues to exercise ownership and control and to realize the benefits of his thirty percent (30%) interest in the 'February 15, 1969, Partnership' ...." Complaint at ¶ 18.

*Second Conveyance:* Acting as grantor, Kramer conveyed a second piece of York County real estate to Wallace Associates on January 10, 1977. In partial consideration for this transfer, Kramer took from Wallace Associates a mortgage in the amount of $321,000.00. This mortgage was listed on Kramer's statement of net worth submitted to Temtex in March, 1978, and at that time it was valued at $316,779.00. On September 15, 1978, Kramer executed an "Assignment of Mortgage," in which he assigned his interest in the mortgage to Brenda L. Wintermeyer for the stated consideration of $1.00. This assignment was also apparently executed in Florida and was notarized by Linda M. Wike. It was recorded on December 31, 1979, in the York County Registry of Deeds office.

On April 12, 1982, after the judgment in favor of Temtex had been docketed in York County, Wintermeyer, at the direction of Kramer, executed a "Declaration of Charitable Donation" transferring all of her interest in the mortgage to the Awareness Mission of Scientology. The declaration was apparently executed in California and was recorded on April 19, 1982, in the York County Registry of Deeds. Exhibit G to the Complaint is a photocopy of a document entitled "Articles of Incorporation of Awareness Mission of Scientology." These Articles bear a stamp stating that they were filed in the Office of the Secretary of State of California on April 12, 1982. The Articles are otherwise undated. The Articles were executed by, and named as Trustees of the Mission, Brenda L. Wintermeyer, Linda M. Wike and John W. Kramer.

Temtex has alleged that Wintermeyer did not pay a fair consideration for the assignment of the mortgage from Kramer and that the Mission did not pay a fair consideration for the transfer to it. Moreover, the Mission "knew

that Wintermeyer made the conveyance in order to prevent the application of the mortgage proceeds to the payment of Kramer's debts." Complaint at ¶ 26. The monthly proceeds of $2,584.86 are allegedly paid to various nominees "at the direction of Kramer" and "Kramer continues to exercise ownership and control and to realize the benefits of the ... mortgage proceeds despite his conveyance thereof ...." *Id.* at ¶¶ 27–28.

*Third Conveyance:* Kramer was the sole shareholder and "alter ego" of Remarkable Enterprises of York, Inc. On January 10, 1977, Remarkable, at the direction of Kramer, conveyed a third parcel of York County real estate to Stan Mail, Inc., receiving as partial consideration for this transfer a mortgage in the amount of $114,000.00. On or about December 7, 1978, Kramer directed Remarkable to assign its interest in the mortgage to Edward A. Roberts. This assignment was apparently executed in Florida; Linda M. Wike again notarized the acknowledgement. The assignment was executed by Janet L. Oberdick and Edward A. Roberts acting on behalf of Remarkable in the capacities of Vice President and Assistant Secretary, respectively. The assignment was recorded in the York County Registry of Deeds office on December 31, 1979. The stated consideration was $1.00.

Roberts, at the direction of Kramer conveyed his interest in the mortgage to Linda M. Wike on or about May 1, 1980. *See* Complaint Exhibit K. On April 12, 1982, Wike executed a "Declaration of Charitable Donation" transferring her interest in the mortgage to the Awareness Mission. This Declaration asserts that the assignment from Roberts to Wike was recorded in York County but no citation is given and no copy of the assignment is included among those attached to the Complaint. The Declaration was executed in California and recorded in the York County Registry of Deeds on April 19, 1982.

It is alleged that Kramer still enjoys the benefits of and exercises ownership and control over the mortgage proceeds by directing that the monthly installments be paid to

various nominees. It is also alleged that none of these conveyances were supported by fair consideration and that all were fraudulent as to Temtex. It is also averred that Awareness knew that Roberts made his conveyance to Wike in order to prevent the application of the proceeds to the payment of Kramer's debts.

Although not expressly stated, the averments of the complaint and the argument presented by Temtex on appeal fairly raise the existence of a civil conspiracy to defraud.[2] This conspiracy was directed and controlled by John W. Kramer. It had two principal goals: to shield Kramer's assets from being applied to pay his debts and yet permit Kramer to maintain control over and realize benefits from those assets. An integral part of the attempt to realize these goals was to mislead Kramer's creditors by putting on the public record transfers which purported to cut off Kramer's interest in the assets. As Temtex argues in its brief, "[A]ll four [Kramer, Wintermeyer, Wike and Awareness Mission] intentionally used the recording statutes in Pennsylvania to defraud creditors of Kramer and they should not be surprised at having to answer this charge in Pennsylvania." Brief for Temtex at 18. We agree.

█ Because our long-arm statute permits the courts of this Commonwealth to exercise personal jurisdiction over nonresident defendants "to the fullest extent allowed under the Constitution of the United States", 42 Pa.C.S.A. § 5322(b), we need only decide whether holding appellees subject to suit in Pennsylvania would be a violation of due process. *Koenig v. International Brotherhood of Boilermakers*, 284 Pa.Super. 558, 567, 426 A.2d 635, 640 (1980). In deciding this question, we adhere to the test formulated[3]

---

**2.** The elements of a cause of action for civil conspiracy are succinctly set forth by the Supreme Court in *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 211, 412 A.2d 466, 472 (1980).

**3.** Although this test was formulated by this court prior to several recent United States Supreme Court decisions, it remains the test applied by the courts in Pennsylvania. *Kingsley & Keith (Canada), Ltd. v. Mercer International Corp.*, 291 Pa.Super. 96, 104 n. 5, 435 A.2d 585, 589 n. 5 (1981).

in *Proctor & Schwartz, Inc. v. Cleveland Lumber Co.*, 228 Pa.Super. 12, 19, 323 A.2d 11, 15 (1974):

First, the defendant must have purposefully availed itself of the privilege of acting within the forum state thus invoking the benefits and protections of its laws. Secondly, the cause of action must arise from the defendant's activities in the forum state. Lastly, the acts of the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over it reasonable. (Citations omitted.)

■ All three parts of the *Proctor & Schwartz* test are satisfied in this case. First, these defendants have purposefully entered Pennsylvania to record transfers of property situated in Pennsylvania on the official records maintained in York County. Not only does such recordation serve to invoke the protection of Pennsylvania law between the parties to the transfers themselves, but also, and more importantly in this case, the recordation of these transfers was an integral part of an alleged scheme, knowingly and intentionally to defraud the creditors of Kramer.

■ Second, the cause of action arises out of the conspiracy to defraud, a material part of which was performed in this Commonwealth. A few acts or even a single act in the forum state may provide a basis for that state's courts to assert jurisdiction over the parties. *McGee v. Internation Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *Vishay Intertechnology, Inc. v. Delta International Corp.*, 696 F.2d 1062, 1065–1069 (4th Cir.1982); *Brown v. Flowers*, 688 F.2d 328, 331–334 (5th Cir.1982). Moreover, it has been held that personal jurisdiction over all of the participants in concerted action may be maintained where a significant part of the action took place in the forum state. *See In Re Arthur Treacher's Franchise Litigation*, 92 F.R.D. 398, 410–412 (E.D.Pa.1981); *National Egg Co. v. Bank Leumi le-Israel B.M.*, 504 F.Supp. 305, 313 n. 7 (N.D.Ga.1980).

Third, the exercise of jurisdiction in this case would be fair and reasonable.

[T]he determination of whether an exercise of jurisdiction is reasonable depends on the burden that would be imposed on the defendant, in light of several factors, including the forum state's interest in resolving the dispute; the plaintiff's interest in obtaining convenient and effective relief; the interstate judicial system's interest in the most efficient resolution of the controversy and the interest of the several states in furthering substantive social policies.

*Kingsley & Keith (Canada), Ltd. v. Mercer International Corp.*, 291 Pa.Super. 96, 109, 435 A.2d 585, 591 (1981). The burden placed on these defendants is not sufficiently heavy to counterbalance the factors favoring the exercise of jurisdiction. Chief among these favorable factors is the interest of this Commonwealth in ensuring the integrity of its public record registries. The interest of the interstate legal system is also served by not permitting our public records to become a haven for the unscrupulous. According to the record before us at this time, appellees sought to further their fraudulent activities by purposefully entering this Commonwealth, either personally or through agents. Appellees cannot now attempt to claim that the recording of these transfers was an innocent "perfunctory" act. We therefore conclude that Pennsylvania may permissibly assert *in personam* jurisdiction over these defendants. That part of the trial court's order of March 23, 1983, which sustained the preliminary objections of Brenda L. Wintermeyer, Linda M. Wike and the Awareness Mission of Scientology on the ground that the court lacked jurisdiction will be reversed.

### B.

In considering Temtex's request for a preliminary injunction, the trial court was presented with the question of "whether a preliminary injunction is appropriate *as to those Defendants who remain after the entry of the [order] dismissing some of them as parties Defendant.*" Tr. Ct. Op. at 3 (emphasis added). At that time, the court had

before it only John W. Kramer, Deanne L. Oberdick and Remarkable Enterprises of York, Inc. The court ruled that if Temtex successfully voided the allegedly fraudulent transfers, it could then garnish the proceeds of the mortgages. *Id.* at 4.

The scope of our review of an order granting or denying a preliminary injunction is normally very narrow.

[W]e do not inquire into the merits of the controversy, but only examine the record to determine if there were any apparently reasonable grounds for the action of the court below. Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the Chancellor.

*Singzon v. Commonwealth Dept. of Public Welfare,* 496 Pa. 8, 10–11, 436 A.2d 125, 126–127 (1981) (citations and quotation omitted).

The principal factor relied upon by the trial court was the reduced number of parties remaining before the court. Because of our determination on the issue of jurisdiction, the complaint will now be reinstated as to three of the five parties dismissed by the trial court. Moreover, we do not believe that, in the face of these averments of fraud and wasting of assets, that it was proper for the court to leave Temtex to a remedy which may be several years from fruition. The payments on these mortgages are lost to Temtex as they are paid. Moreover, these appellees have by their past behavior demonstrated their desire to put these assets beyond the reach of any creditors. We therefore conclude that the proper performance of our appellate function requires that we disturb the decision of the Chancellor.

The essential prerequisites for the issuance of a preliminary injunction are as follows:

[F]irst, that it is necessary to prevent immediate and irreparable harm which could not be compensated by damages; second, that greater injury would result by refusing it than by granting it; and third, that it properly

restores the parties to their status as it existed immediately prior to the alleged wrongful conduct. Even more essential, however, is the determination that the activity sought to be restrained is actionable, and that the injunction issued is reasonably suited to abate such activity. And unless the plaintiff's right is clear and the wrong manifest, a preliminary injunction will not generally be awarded.

*Singzon v. Commonwealth Dept. of Public Welfare, supra,* 496 Pa. at 11, 436 A.2d at 127.

We have concluded that these standards have been met. Temtex has alleged the dissipation of assets which were conveyed away by Kramer or at Kramer's direction. These transactions were *prima facie* fraudulent as to Kramer's creditors under the UFCA. 39 P.S. §§ 354, 357 and 358(b). Once these assets have been dissipated, there is apparently nothing left for Kramer's creditors to execute on no matter what damage award may be made. Furthermore, Temtex has offered to post a bond in sufficient amount to pay for any damage sustained by those injured should the issuance of an injunction later be discovered to be erroneous. The injury stemming from the denial of the injunction would therefore outweigh the injury should an injunction be granted erroneously. Therefore, we believe that the documents filed of record in this case establish that the conduct complained of is actionable under the UFCA, that Temtex's right is clear and the wrong manifest. We can conceive of few cases in which the grant of a preliminary injunction would be more appropriate.

### III—No. 119

John W. Kramer, Sr., has appealed from that part of the trial court's first order issued March 23, 1983, which dismissed his preliminary objections challenging the court's exercise of *in personam* jurisdiction as to him. Such an order is interlocutory and not appealable unless it falls within an exception set forth in a statute or rule. Pursuant to Pa.R.A.P. 311(b), an appeal may be taken as of right

from an order sustaining the trial court's jurisdiction over the person, but only if one of two conditions is fulfilled:

(1) the plaintiff ... files of record within ten days after the entry of the order an election that the order shall be deemed final; or

(2) the court states *in the order* that a substantial issue of jurisdiction is presented.

In this case, no election has been filed and the trial court did not certify in the order of March 23, 1983, that a substantial issue of jurisdiction was presented.

■ We note, however, that the photocopied docket sheets in the reproduced record and a statement in Appellant Kramer's brief indicate that the trial court issued an order on June 23, 1983, amending its order of March 23 to state that a substantial issue existed. This assertion is not denied. Moreover, the court did have jurisdiction to make such a formal correction pursuant to Pa.R.A.P. 1701(b)(1). *See J. Nevin White Lumber Co., Inc. v. Sheriff,* 60 Pa. Commw. 501, 431 A.2d 1190 (1981). In addition, the trial court could have taken this action had we directed or authorized it to do so. Rule 1701(b)(5). Finally, the issue of the trial court's jurisdiction over Kramer was fully litigated on the merits and Temtex has raised no objection to our doing so on appeal. We therefore conclude that, in the interest of judicial economy and expediting the ultimate decision on the merits, we should disregard or deem satisfied the certification requirement of Rule 311(b)(2). Pa.R. A.P. 105(a); *Parker v. Commonwealth, Department of Public Welfare,* 49 Pa.Commw. 619, 411 A.2d 897 (1980). We will therefore reach the merits of this appeal.

■ The trial court, after discussing the applicable minimum contacts principles, ruled that there were sufficient contacts between Kramer and this Commonwealth to permit it to properly assert jurisdiction over him. We agree. The trial court summarized Kramer's contacts as follows:

[Kramer] sold real estate situate in York County to the present mortgagors, and accepted as security for repayment certain mortgage documents recorded in the Office

of the Recorder of Deeds in York County. Therefore, the entire basis for the later transactions was constructed by Defendant Kramer in this State. Any benefits accruing to him by way of repayment of the mortgage principal or as consideration for the assignment of interests in the mortgages negotiated by him as part of the settlements for the York County real estate, were a direct result of his activity within the forum State of Pennsylvania. Tr. Ct. Op. at 7–8.

Furthermore, Kramer's participation in the alleged conspiracy, as explained above in Section II, renders him subject to the jurisdiction of the courts of this Commonwealth. The trial court's order sustaining the exercise of *in personam* jurisdiction as to Kramer will be affirmed.

## IV—Motion For Stay

 Subsequent to oral argument in this case, counsel for Kramer filed with this Court a motion for a stay of all further proceedings, including the rendering of an opinion and issuance of an order. Counsel informed us that his client has filed for bankruptcy and contends that any further proceedings in this case would violate the Bankruptcy Code's automatic stay. 11 U.S.C.A. § 362(a). We disagree. It has yet to be determined whether Kramer has any interest in the assets which are the subject of this suit. The Bankruptcy Code does not bar proceedings in a case in which the bankruptcy debtor has no interest in the property at issue. *In Re Sparkman,* 9 B.R. 359 (Bkrtcy.E.D.Pa. 1981); *Foulke v. Lavelle,* 308 Pa.Super. 131, 454 A.2d 56 (1982). Moreover, the fact that Kramer, individually, filed for bankruptcy does not automatically stay proceedings against the parties joined here as co-defendants who currently claim an interest in these assets, *see Pitts v. Unarco Industries, Inc.,* 698 F.2d 313 (7th Cir.1983), nor does such action stay proceedings against Kramer as "trustee" of one of the defendants in this action. *See In Re Bailey,* 11 B.R. 199 (Bkrtcy.E.D.Va.1981). Therefore, Kramer's application

for a stay will be denied without prejudice to its renewal at a more appropriate time.

In accordance with all of the foregoing reasons, we make the following disposition of these appeals:

At *No. 117 Harrisburg 1983*, the appeal is quashed.

At *No. 119 Harrisburg 1983*, the order of the trial court is affirmed.

At *No. 143 Harrisburg 1983*, the order of the trial court sustaining the preliminary objections to the court's exercise of *in personam* jurisdiction filed on behalf of Brenda L. Wintermeyer, Linda M. Wike and the Awareness Mission of Scientology is reversed and the complaint is reinstated as to them. Also, the order of the trial court denying the motion of Temtex Products, Inc., for a preliminary injunction is reversed and the trial court is hereby directed to enter an appropriate order in accordance with the foregoing opinion.

Appellant Kramer's request for a stay is denied.

It is so ordered.

Jurisdiction is not retained.