## Gardner v. U.S.W.A. International Union

*Blane A. Black,* for plaintiff.
*Frank J. Lucchino,* for defendants.

TERPUTAC, *J.,* September 22, 1986—Before the court is the question whether the president of a local union may rescind his resignation after the resignation had been acted upon and approved by the membership of the union.

Plaintiff, Gerald Gardner, filed a complaint in equity and a petition for preliminary injunction against United Steelworkers of America Interna-

tional Union, United Steelworkers of America District no. 15, Andrew Palm, individually and as Director of United Steelworkers of America, District no. 15, and Lawrence Davis, individually and as acting President of United Steelworkers of America, Local Union, No. 1187, defendants.

During the course of the trial, the court dismissed the suit against District 15 and its Director, Andrew Palm. For the purposes of this opinion the court will refer to the United Steelworkers of America, AFL-CIO-CLC (its proper title) as the International Union, and to Local No. 1187 as the Local Union.

Gardner was elected president of the Local Union in 1984 for a three-year term. On June 19, 1986, he submitted his resignation as president, the resignation to take effect on August 2, 1986. This letter states in part:

"Effective August 2, 1986 I will resign my elected position as President of our Local. I will only remain until then to dispose of any duties or work remaining and to work with and assist all I can."

The letter was addressed to the International Representative, Russell E. Bergstedt, and to the recording secretary of the local union. At the regular meeting of the local union on June 24, 1986, a motion was passed accepting the resignation. Stating that he was persuaded to remain as president by various members of his union, Gardner notified the recording secretary of the local union on July 9, 1986, that he wished to rescind the resignation and to remain as president. Petitions were circulated on his behalf by some members of the union. At the regular monthly meeting of the local union held on July 22, the members approved a motion to reconsider the resignation and a motion to rescind the resignation. The motions were passed by a substantial majority either 57 to 19 or 59 to 17, the testimony is

conflicting. Gardner then notified District 15 that he intended to resume the presidency of the local union. A few days later the associate general counsel of the international union informed Gardner that the procedure for rescission of the resignation had been improperly followed and that Gardner would not be recognized as president.

On or about August 3, Gardner was denied access to the office of the local union, and defendants have refused to recognize him as president. Contending that he and the local union have sustained immediate and irreparable injury, Gardner requested the court to order his reinstatement as president for the rest of his elected term and to direct defendants to refrain from engaging in union activities and transacting any union business. In the accompanying petition for injunctive relief, Gardner further asked the court to issue a preliminary injunction pending a hearing on the merits.

At the time the original suit was presented and at the time a hearing on the merits was held, the court declined to issue a preliminary injunction. Under Pennsylvania Law the prerequisites for the issuance of a preliminary injunction are as follows:

(1) It is necessary to prevent immediate and irreparable harm which could not be compensated for in damages; (2) greater injury would result from refusing than by granting the injunction; and (3) its issuance properly restores the parties to their status as it existed immediately before the alleged wrongful conduct. Temtex Products Inc., v. Kramer, 330 Pa. Super. 183, 479 A.2d 500 (1984). First, no irreparable harm has been proved by plaintiff. The local union continues to be operated in a businesslike fashion. Second, no serious injury has resulted so that the second prerequisite has not been proved. In any event, the court is of the opinion that the evi-

dence presented on both sides is sufficient for the court to render an adjudication in accordance with Pa. R.C.P. 1517 on the merits of the equity suit itself.

As to the procedure to be followed where an officer wants to reconsider his resignation, Gardner testified he was told by an official for the district what to do. He further contends there is nothing in the international constitution nor in any of the by-laws on what procedure should be used when an officer wishes to rescind his resignation. Gardner testified there is dissension among the members and that the business of the local union is not being properly conducted. In this suit Gardner claims he should be reinstated as president of the local union because the procedure utilized in rescinding his resignation was proper.

During defendants' case in chief, the international representative, Russell E. Bergstedt, admitted there is nothing in the international constitution and the by-laws that covers disputed resignations. He testified, nevertheless, that there is a booklet entitled "Parliamentary Procedure for a Local Union," which was prepared for local union use many years ago. Bergstedt testified he used this booklet on one occasion when he was president of the local union and that it has been in the possession of the former and present recording secretary.

Defendants argue that (1) the matter of the procedure utilized in a local union election and the matter of who is president of the union are internal affairs with which the courts should not interfere, and (2) once a resignation from office is submitted and acted upon by the union membership, the resignation is final.

Although the argument of the defendants is not expressed as an objection to subject-matter juris-

diction or an objection to the equity side of the court, the defendants have in effect implied such objections. Although there is no such thing as equity jurisdiction under modern practice for the reason that the law side and the equity side are two sides of the court of common pleas, the question is still whether equity may be invoked. School District v. Allegheny County Board of School Directors, 440 Pa. 113, 269 A.2d 904 (1970). However, since defendants have failed to present preliminary objections to the equity side, any such objections are waived. Further, the test of subject-matter jurisdiction is the competency of the court to determine controversies of the general class to which the case presented for its consideration belongs. Witney v. Lebanon City, 369 Pa. 308, 85 A.2d 106 (1952). The proceeding before the court is an action in equity in which plaintiff requests the court to restore his right to be president of the union. Since Gardner has an interest in the office of the organization, he has the right to seek the aid of equity to restore this interest provided that there is no adequate remedy at law. Defendants have failed to point to any statutory or administrative remedy at law. The internal politics of the international union and of the local union are of no concern to the court. What is before the court is not simply a matter of interfering in the internal affairs of the labor organization; rather it is a matter of a litigant seeking redress where he has no adequate remedy at law. We hold that the court has jurisdiction to address the inquiry.

As to the issue of the rescission motion, it is undisputed that the membership of the local union reconsidered its prior motion in which it had accepted the resignation. The rescission, it should be noted, took place before the effective date of the resignation. The effective date would have been Au-

gust 2. The letter of resignation was not irrevocable. Neither the by-laws of the Local Union 1187 nor the constitution of the international union nor the by-law for the local unions address the effect of the resignation. Therefore, unless the procedure for the rescission of resignations is mandatory upon local unions in some other fashion, a labor organization is free to choose its own methods so long as the methods do not violate any applicable statute.

As to the booklet it merely refers on the last page to Robert's Rules of Order; it does not specify in the booklet what procedure should be followed. Gardner and his witnesses say they never heard of the booklet and the booklet has never been used or referred to. We find that although the booklet obviously exists, it has not been used and the other officers have not been aware of it. We reiterate that nothing in the international or local union by-laws has addressed Robert's Rules of Order. In the introduction the booklet recites as follows:

"This booklet is intended only to acquaint the reader with the basic principles underlying parliamentary rules. For more complete study of parliamentary procedure, consult the references listed at the end of this booklet."

Fundamentally, the booklet addresses the subject of how the chairman of the meeting should conduct the union meeting. It does not discuss the procedure for resignations and does not discuss the rescission of resignations. In addition, the defendants have failed to show that Robert's Rules of Order were ever adopted or incorporated into the union procedures. Even so, section 34 of Robert's Rules of Order, at page 259, states as follows:

"The motions to Rescind or to Amend Something Previously Adopted are not in order under the following circumstances . . .

d) When a resignation has been acted upon, or a person has been elected to or expelled from membership or office, and the person was present or has been officially notified of the action. (The only way to reverse an expulsion is to follow whatever procedure is prescribed by the bylaws for reinstatement — or admission or election.)"

Generally, rules of parliamentary practice are merely procedural and not substantive. Rules of procedure are ordinarily prescribed for the orderly and convenient conduct of the proceedings of an organization. These rules may be adopted by a deliberative body but they are subject to revocation, modification or waiver at the pleasure of the body adopting them. 67A C.J.S. Parliamentary Law §4.

The narrow issue, then, is whether the rescission of the resignation by the membership at the union meeting in July was proper. We hold that the motions in the July meeting were proper in order to rescind Mr. Gardner's resignation. Merely because the rescission was deemed to be ineffective by the office of general counsel is immaterial for there is nothing in the International Constitution nor in the By-Laws for Local Unions nor in the By-Laws of Local Union 1187 that proscribes the procedure which the membership used. Defendants have failed to prove that Robert's Rules of Order were ever adopted or incorporated into union procedures. Accordingly, the use of such rules is entirely discretionary with the union membership. The membership may use such rules or they may choose not to do so.

## DECREE NISI

And now, this September 22, 1986, it is ordered, adjudged, and decreed as follows:

1. Gerald Gardner is hereby reinstated as president of Local Union 1187 for the unexpired portion

of his elected term, and he shall be entitled to use the rights and privileges of the office and to be subject to the duties required by the local union and the international union.

2. Lawrence Davis is removed from the office of president of Local Union 1187 and he is ordered and directed to turn over to Gerald Gardner such papers, documents, and keys as may be proper to restore Gardner to the presidency.

3. United Steelworkers of America, AFL-CIO-CLC is ordered and directed to recognize Gerald Gardner as president of Local Union 1187.

4. Local Union 1187 shall transact no further business and shall take no official action nor shall it expend any union funds until Gerald Gardner assumes the presidency of the union. This order shall become effective 10 days from this date, unless the parties agree that Gerald Gardner may assume the presidency before that time.

5. The court shall retain jurisdiction of this matter until the court is assured that its order has been fully complied with.