Theodore ZAPACH, Plaintiff,

v.

Thomas DISMUKE, Defendant.

No. CIV. A. 00–CV–3972.

United States District Court, E.D. Pennsylvania.

March 26, 2001.

Richard J. Orloski, Allentown, PA, for plaintiff.

Robert G. Hanna, Jr., Harrisburg, PA, for defendant.

## OPINION AND ORDER

VAN ANTWERPEN, District Judge.

### I. INTRODUCTION

Plaintiff Theodore Zapach has brought this action against Defendant Thomas Dismuke under 42 U.S.C. § 1983 for an alleged First Amendment violation, and for state law claims of assault and battery arising from the same course of events. We have jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367. Before the Court is Defendant's Motion for Summary Judgment on all claims. For the reasons explained herein, we hold that Defendant violated Plaintiff's right to free speech as guaranteed by the First Amendment to the United States Constitution, but Defendant is entitled to both qualified immunity and absolute quasi-judicial immunity for such violation. We decline to exercise supplemental jurisdiction over the state-law claims.[1]

---

1. These claims are already pending in state court. We disapprove of the practice of De-

## II. STANDARD OF REVIEW

The court shall render summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (*"Anderson I"*). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. *See id.* at 248, 106 S.Ct. 2505. All inferences must be drawn and all doubts resolved in favor of the non-moving party. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir.1985).

On motion for summary judgment, the moving party bears the initial burden of identifying those portions of the record that it believes demonstrates the absence of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To defeat summary judgment, the non-moving party must respond with facts of record that contradict the facts identified by the movant and may not rest on mere denials. *See id.* at 321 n. 3, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(e)); *see also First Nat'l Bank of Pa. v. Lincoln Nat'l Life Ins. Co.*, 824 F.2d 277, 282 (3d Cir.1987). The non-moving party must demonstrate the existence of evidence that would support a jury finding in its favor. *See Anderson I*, 477 U.S. at 249, 106 S.Ct. 2505.

## III. FACTUAL BACKGROUND

On September 8, 1998, Plaintiff attended a publicly announced meeting of the Lower Milford Township Zoning Hearing Board that had been called to hear an appeal, a request for a special exception to a zoning ordinance by the developer of a proposed mobile home park. (Zapach Dep. 11.) The notice of the meeting and procedural statements made by the Defendant at the beginning of the meeting in his capacity as Chairperson of the Board indicated that members of the public would be heard on whether the special exception should be granted. (Def.Supp.Mem.Exh. B; Exh. C, Hearing Tr. 4–7.) More than two hundred members of the public attended the meeting, and more than twenty-five registered to testify. (Def.Exh. G.) Due to the expected large attendance, the meeting was held at a fire hall within the township instead of the usual location at the township's municipal building. The general consensus of the community, and all those testifying, including the Plaintiff, was against the allowing the land, then used as a rifle range, to be used for a mobile home park. (Dismuke Dep. at 21; Def.Exh. G.)

The Zoning Hearing Board has the power to interpret and apply zoning ordinances by hearing appeals from the actions of a zoning officer and hearing requests for special exceptions. The Board does not have the power to enact zoning ordinances; the Township Supervisors have that power. (Dismuke Dep. 46–47; Zapach Dep. 10, 13, 18; Def.Supp.Mem. 3–4).

fense Counsel of submitting papers to this Court with dual captions, for both this Court and the Court of Common Pleas. Further, Defense Counsel should, in the future, not refer to proceedings before one court as if they occurred in another, such as a reference to an oral argument before this Court that actually occurred before the Court of Common Pleas.

After the applicant made his argument, the public commented on the appeal. Persons wishing to make a statement were required to register during the meeting, and then be sworn before testifying. Persons who merely wished to ask a question, however, were not sworn. Plaintiff was near the end of the list of those who had requested to speak, and when he was called, he gave his name and was sworn. (Dismuke Dep.Exh. H, Hearing Tr. 93.)

Plaintiff began his remarks by explaining his opposition to the mobile home park. (*Id.*, Tr. 94.) Eventually he asked Defendant for permission to read a prepared text. (*Id.*, Tr. 96.) Defendant inquired as to how much time would be needed, and when Plaintiff said that it was only a page and gave a copy to Defendant, Defendant told him to proceed. Plaintiff started by saying that the speech pertained to the curative amendment process, which the applicant would be entitled to file, and whether the applicant could win a curative amendment. (*Id.*) This was not the matter before the Zoning Hearing Board, however, and the Board had no power regarding the curative amendment process. Defendant allowed Plaintiff to begin his remarks on this subject, even though they were not relevant to the matter at hand.

Defendant allowed Plaintiff to make remarks on this subject until he mentioned the names of Jasper and Joan Dreibelbis, a former and current township Supervisor, respectively. (*Id.*, Tr. 98.) When Plaintiff mentioned these names, Defendant told him not to use names and directed that the sentence be stricken from the record. (*Id.*) Plaintiff objected, arguing that the actions of these Supervisors pertained to why some property owners would seek a curative amendment. Defendant told Plaintiff to stop speaking, but Plaintiff continued. (*Id.*) Defendant arose from his seat, approached Plaintiff, put his hand on Plaintiff's arm, tried to grab the paper on which the speech was printed from Plaintiff's hand, and guided him away from the microphone as Plaintiff attempted to continue to read his prepared text. (Dismuke Dep. at 31–34; Def.Exh. E.) Plaintiff also alleges that Defendant pushed Plaintiff from behind by Plaintiff's shoulders back to Plaintiff's seat. (Zapach Dep. at 35–36.)

## IV. FIRST AMENDMENT CLAIM UNDER 42 U.S.C. § 1983

### A. Analytical Framework

Our analysis begins with a discussion of the requirements for establishing a constitutional claim under 42 U.S.C. § 1983. Section 1983 reads, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Section 1983 does not create substantive rights; instead "it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir.1996). A plaintiff seeking to establish a claim under Section 1983 "must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting under color of state law." *Id.* (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir.1995)). If the Plaintiff has made out a prima facie case for the deprivation

of a federal right under color of state law,[2] we must then determine whether the Defendant is entitled to qualified immunity or official immunity for his actions.

## B. Discussion

### 1. First Amendment

■ Whether an activity is protected by the First Amendment is a question of law. *See Watters v. City of Philadelphia,* 55 F.3d 886, 892 (3d Cir.1995). The First Amendment provides in part that "Congress shall make no law ... abridging the freedom of speech...." U.S. Const. amend. I. The freedom of speech is not absolute, however: a violation occurs only when the restricted speech is constitutionally protected and when the government's justification for the restriction is insufficient. *See Frisby v. Schultz,* 487 U.S. 474, 479, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988). The Supreme Court has articulated a three-step, forum-based test for determining whether a state actor violated a plaintiff's First Amendment right to free speech. *See Cornelius v. NAACP Legal Defense & Educational Fund,* 473 U.S. 788, 797, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985). We must determine (1) whether plaintiff's speech is protected by the First Amendment; (2) the nature of the forum: public, designated or limited public, or nonpublic; and (3) whether the defendant's justifications for limiting the plaintiff's speech satisfy the requisite standard.[3] *See id.*

■ The First Amendment's protection of free speech, made applicable to the states through the Fourteenth Amendment, extends to a broad range of speech and expressive conduct. *Hurley v. Irish–American Gay, Lesbian and Bisexual Group of Boston,* 515 U.S. 557, 115 S.Ct. 2338, 132 L.Ed.2d 487 (1995). Speech on public issues and political matters lies at the heart of protected speech. *See, e.g., R.A.V. v. City of St. Paul,* 505 U.S. 377, 422, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992) ("Our First Amendment decisions have created a rough hierarchy in the constitutional protection of speech. Core political speech occupies the highest, most protected position....") (Stevens, White and Blackmun, JJ. concurring); *Burson v. Freeman,* 504 U.S. 191, 196, 112 S.Ct. 1846, 119 L.Ed.2d 5 (1992) ("There is practically universal agreement that a major purpose of [the First] Amendment was to protect the free discussion of governmental affairs."); *FCC v. League of Women Voters,* 468 U.S. 364, 381, 104 S.Ct. 3106, 82 L.Ed.2d 278 (1984) ("Expression on public issues has always rested on the

**2.** There is no dispute in this case that the Defendant's actions were under color of law. Therefore we need only determine whether there has been a deprivation of a federal right.

**3.** Defendant's analysis of the First Amendment claim in his Brief in Support of his Motion for Summary Judgment and in his Supplemental Memorandum of Law is of limited assistance in ruling on his motion. Defendant's legal analysis and arguments are structured as if this were a case in which a public employee was retaliated against for engaging in speech. Such analysis requires the plaintiff first to show that the speech in question was protected, using a different standard than that used in forum analysis. To be

protected the speech must be on a matter of public concern, and the employee's interest in expression on this matter must not be outweighed by any injury the speech could cause to the interest of the state as an employer in promoting the efficiency of the public services it performs through its employees. Second, the plaintiff must show that the protected activity was a substantial or motivating factor in the alleged retaliatory action. Finally, the defendant may defeat plaintiff's claim by demonstrating by a preponderance of the evidence that the same action would have been taken even in the absence of the protected conduct. *See Merkle v. Upper Dublin School Dist.,* 211 F.3d 782, 793 (3d Cir.2000); *Watters v. City of Philadelphia,* 55 F.3d 886, 892 (3d Cir.1995).

highest rung of the hierarchy of First Amendment values."); *Buckley v. Valeo,* 424 U.S. 1, 14–15, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (per curiam); *New York Times Co. v. Sullivan,* 376 U.S. 254, 270, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) ("debate on public issues should be uninhibited, robust, and wide-open"). There can be little doubt that the Plaintiff's speech is protected under the First Amendment.[4] He discussed the matter before the Zoning Hearing Board and then discussed matters related to the zoning ordinances and procedures extant in the township, all of which are public issues.

 Next we must consider the forum in which Plaintiff's speech occurred. The extent to which government may regulate expressive activity on public property depends upon the character of the public property in question.[5] *See Perry Education Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 44, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). The Supreme Court has recognized three types of fora that may exist on government property: traditional public fora, designated public fora, and nonpublic fora. Traditional public fora are places like streets and parks "that by long tradition or by government fiat [have] been devoted to assembly and debate." *Arkansas Educ. Television Comm'n v. Forbes,* 523 U.S. 666, 677, 118 S.Ct. 1633, 140 L.Ed.2d 875 (1998). Designated public fora are those that the government opens "for use by the public at large for assembly and speech, for use by certain speakers, or for the discussion of certain subjects." *Cornelius,* 473 U.S. at 802, 105 S.Ct. 3439. The nonpublic forum is public property which the government has not opened to public communication either by tradition or by designation. *Perry,* 460 U.S. at 46, 103 S.Ct. 948. Restrictions on speech in a non-public forum must be reasonable and content-neutral. *See Arkansas Educ. Television Comm'n,* 523 U.S. at 677–78, 118 S.Ct. 1633.

There is one other category of fora: the limited public forum. "When the government allows selective access to some speakers or some types of speech in a nonpublic forum, but does not open the property sufficiently to become a designated public forum, it creates a 'limited public forum.'" *Summum v. Callaghan,* 130 F.3d 906, 916 (10th Cir.1997). The Third Circuit has noted that although the Supreme Court has discussed limited public fora, which are designated for expression, but only on limited topics, *see, e.g., Rosenberger v. Rector and Visitors of Univ.,* 515 U.S. 819, 829, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995), there is some uncertainty whether limited public fora are a subset of designated public fora or a type of nonpublic fora. *See Whiteland Woods, L.P. v. Township of West Whiteland,* 193 F.3d 177, 182 n. 2 (3d Cir.1999) (citing *Summum,* 130 F.3d at 914–15 (10th Cir.1997) (discussing cases)); *see also, e.g., Brody v. Spang,* 957 F.2d 1108, 1118 (3d Cir.1992)

---

**4.** Defendant argues that Plaintiff's speech was unprotected because it was not relevant to the matter before the Board. Defendant confuses the question of whether speech is protected under the First Amendment with the question of the extent to which the First Amendment allows regulation of protected speech in a given set of circumstances. Such confusion is probably due to the use of retaliation analysis instead of forum analysis. As a result, Defendant's brief does not help us to decide whether Plaintiff has a right under the First Amendment that Defendant violated.

**5.** Although the Zoning Hearing Board normally conducted business in the Township building, the meeting in question was conducted at a fire hall in the Township due to the large number of people expected to attend. There is no evidence whether the fire hall was public property, but hearing was a governmental meeting to which the public was invited.

("When examining the extent of use granted, we must be mindful that a designated public forum 'may be so ·designated for only limited uses or for a limited class of speakers.' Restrictions of this type do not mean that the forum is non-public, but show that the government has created a 'limited public forum,' a subset type of designated public forum, whose scope is circumscribed either by subject matter or category of speaker.") (quoting *Student Coalition for Peace v. Lower Merion School Dist. Bd. of School Directors*, 776 F.2d 431, 436 (3d Cir.1985).) The Third Circuit has generally applied the constitutional requirements applicable to designated public fora to limited public fora. *See Whiteland Woods*, 193 F.3d at 182 n. 2 (citing *Christ's Bride Ministries, Inc. v. Southeastern Pa. Transp. Auth.*, 148 F.3d 242, 248–55 (3d Cir.1998)).

A number of courts have held that a designated public forum exists when a governmental body affords the public an opportunity to address the body at its meeting. *See, e.g., Mesa v. White*, 197 F.3d 1041 (10th Cir.1999) (county commission meeting); *Jones v. Heyman*, 888 F.2d 1328, 1331 (11th Cir.1989) (members of public were allowed to speak during the Commission's discussion of an agenda item if they previously submitted a written request to speak on this item); *Scroggins v. City of Topeka*, 2 F.Supp.2d 1362, 1370 (D.Kan.1998) (public comment portion of city council meeting was a designated public forum); *Wilkinson v. Bensalem Township*, 822 F.Supp. 1154, 1157–58 (E.D.Pa. 1993) (public comment portion of Township Council meeting); *Pesek v. City of Brunswick*, 794 F.Supp. 768, 782 (N.D.Ohio 1992) (council opened meeting to public and allowed public to speak on items on the agenda). *See also Perry*, 460 U.S. at 45, 103 S.Ct. 948 (establishing the three categories of public property and citing the school board meeting in *City of Madison, Joint School Dist. No. 8 v. Wisconsin Employment Relations Commission*, 429 U.S. 167, 175, 97 S.Ct. 421, 50 L.Ed.2d 376 (1976) as one example of a designated public forum). *Cf. Brown v. Smythe*, 780 F.Supp. 274, 280 (E.D.Pa.1991) (stating that a borough council meeting was a limited public forum, but reciting the standards applied to designated public fora).

■ A designated public forum is created because the government intends to create such a forum. Inaction does not make such a forum; neither does the allowance of "limited discourse." *See Christ's Bride Ministries, Inc.*, 148 F.3d at 248 (citing *Cornelius*, 473 U.S. at 802, 105 S.Ct. 3439). We therefore must look to the Zoning Hearing Board's intent with regard to the forum in question and ask whether it clearly and deliberately opened the meeting to public comment. *See id.* (citing *Hazelwood School Dist. v. Kuhlmeier*, 484 U.S. 260, 269–270, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988); *Perry*, 460 U.S. at 37, 103 S.Ct. 948); *see also Brody v. Spang*, 957 F.2d 1108, 1117 (3d Cir.1992). The Zoning Hearing Board's notice that there would be a public hearing gave notice that there would be an appeal for a special exception for a mobile home park, which was specified, and "all persons interested, or desiring to protest the allowance of the appeal, may appear and be heard." (Def.Supp.Mem.Exh. B.) The notice, including the foregoing statement, was read into the record at the beginning of the hearing. (Def.Supp.Mem. Exh. C., Hearing Tr. at 6.) The Defendant, as Chairperson, also told the public that:

> [W]e are going to send a clipboard around that you can put your names on and indicate whether you will want to testify and whether you are for the appeal or against the appeal.... By testifying, I mean make a position known. If you want to ask a question, you can do it but you have to come up here to ask the question and give your name

and address, if you haven't given it on the clipboard. So you will not be sworn if you just ask questions but if you ask questions and start going into a statement, you are going to be stopped. We are going to try and end this meeting around 11:00 because it doesn't look like we are going to get through .... [notice was read] And that is what the clipboard is for; that is going to go around and you can indicate how you feel about it. (*Id.* at 4–7.) The papers on the clipboards also clearly indicated that appeal was specifically for a special exception, and that if a person wished to testify, they should indicate whether they would testify for or against the appeal. (Def.Exh. F.) Therefore, we find that the meeting of the Zoning Hearing Board was a designated public forum for the purpose of obtaining public comment for or against the request by the developers of a mobile home park for a special exception.[6]

■■■ After the government has created a designated public forum, setting boundaries on classes of speakers or topics of speech, designated public fora are treated like traditional public fora. *See Perry,* 460 U.S. at 45–46, 103 S.Ct. 948. Time, place, and manner restrictions on speech in a public forum are permissible "provided (1) the restrictions are justified without reference to the content of the regulated speech, (2) that they are narrowly tailored to serve a significant governmental interest, and (3) that they leave open ample alternative channels for communication of the information." *Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746,

105 L.Ed.2d 661 (1989) (internal quotation marks omitted). Content-based restrictions on private speech must survive strict scrutiny to pass constitutional muster, *see International Society for Krishna Consciousness, Inc. v. Lee,* 505 U.S. 672, 678, 112 S.Ct. 2701, 120 L.Ed.2d 541 (1992); *Perry,* 460 U.S. at 45–46, 103 S.Ct. 948; *Christ's Bride Ministries, Inc.,* 148 F.3d at 247; that is, they must be "narrowly drawn to effectuate a compelling state interest." *Perry,* 460 U.S. at 46, 103 S.Ct. 948; *see also Kreimer v. Bureau of Police,* 958 F.2d 1242, 1256 (3d Cir.1992). When a restriction on speech is "aimed not at the content" of the speech but at the "secondary effects" generated by or associated with the speech, the restriction is considered to be content-neutral. *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 47, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986); *see also Boos v. Barry,* 485 U.S. 312, 320, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988). As a long as a restriction "serves purposes unrelated to the content of expression," it is content-neutral, "even if it has an incidental effect upon some speakers or messages but not others." *Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) (citing *City of Renton,* 475 U.S. at 47–49, 106 S.Ct. 925).

Therefore, in order to decide whether Defendant's interference with Plaintiff's speech was permissible, we must determine the reason for the interference, whether the reason was content-based or content-neutral, and whether the appropriate standard was met.[7]

6. The outcome in this case would be the same if we treated the meeting as a limited public forum, because the Third Circuit applies the standards of designated public fora to limited public fora. Even if the standards for a nonpublic forum were applied, however, the outcome would be the same. The content-neutral restriction of relevancy meets the heightened standard applicable in a des-

ignated public forum, as discussed *infra,* op. at 692, so it would meet the reasonableness standard applicable in a nonpublic forum. Further, the same standard is applied to content-based restrictions in any forum: they must be narrowly tailored to a compelling government interest.

7. The Defendant also argues that because Plaintiff was able to finish reading his pre-

Plaintiff argues that his speech was censored due to its content, specifically his mentioning of the names of Jasper and Joan Dreibelbis.[8] (Pl.Br. at 8–9). Defendant argues that Plaintiff's speech was not protected because it was not relevant to the hearing, and in his deposition Defendant avers that he stopped Plaintiff from speaking because his comments were not germane.[9] (Dismuke Dep. at 20–27, 30–

pared text, albeit without the benefit of the microphone and off the record, Defendant did not violate Plaintiff's rights. Although Plaintiff may have finished reading his prepared text, he did so only after Defendant interrupted him repeatedly and then physically removed him from the speaking area. It is also not clear from the record whether Plaintiff would have continued with his remarks after he finished reading his prepared text, had he been allowed to do so. Defendant has pointed to no case, and our extensive canvassing of federal cases reveals none, in which such interferences by an official were deemed not to be an abridgement of the freedom of speech because the Plaintiff eventually finished speaking.

8. The Plaintiff spoke first against the appeal, and then started reading a prepared text. He had read about half of it before Defendant interrupted and stopped him, as follows:

Mr. Zapach: I believe that industrial zoning in this area has been a serious oversight by our planning commission. For 29 years, our planning commission has been under the leadership of either Jasper or Joan [Dreibelbis]. The time has come to tell the supervisors—

Mr. Dismuke: No names. We'll strike that particular sentence.

Mr. Zapach: You are ordering me to stop my freedom of speech?

Mr. Dismuke: I did not want you to bring in people's names.

Mr. Zapach: But it pertains, Tom; this pertains to why some property owners are going to be after the curative amendment. The curative amendment, my last sentence.

Mr. Dismuke: Just hold it; just a moment.

Mr. Zapach: That at a recent regional township—

Mr. Dismuke: I'm not kidding.

Mr. Zapach: Supervisor—

Mr. Dismuke: Get off that mike.

Mr. Zapach: Stated that the curative amendment process should be abolished

(Note: Unreportable by the court reporter.) (Dismuke Dep.Exh. H at 6–7, Tr. at 97–98).

9. In a response to a question as to why, in light of Defendant's numerous statements at his deposition that he felt that Plaintiff's statements were not germane, it seemed from the statements at the hearing that the Defendant was only concerned with not having these persons' names in the record, the Defendant testified as follows:

A: I was concerned with the subject material.

Q: Why didn't you say, I'm concerned with the subject material at that point?

A: Because I wanted to say it this way.

Q: Could you tell me why you made that decision to only talk about names when you were actually concerned about the subject material?

A: I thought it was effective to do it this way.

Q: Why did you think this way would be more effective than to say, I don't think the subject matter that you are talking about is germane?

A: Because to me it was something he said before, time and time again, and he would finally get the idea that it was not adequate for our meeting.

Q: So, you felt that Mr. Zapach would get the idea if you said I don't want you to say any names, I don't want you to bring any names in, you thought by saying that that you would give him the idea that you didn't feel that the topic was germane?

A: He would get the message I hoped.

Q: And just to be clear, what was the message?·

A: That you are not giving—let's say information, germane to the subject at hand.

\* \* \*

Q: Now, can you tell me why you directed Mr. Zapach to get off that mike?

A: He was not giving information which was appropriate for the meeting. That's why I asked him to get off of the mike.

Q: What information was he giving that you believe was not appropriate?

A: He was talking about curative amendment which is totally different that what we were doing.

31.) The transcript and videotape of the hearing show that Defendant stopped Plaintiff from speaking because he used specific persons' names in making his comments, (Dismuke Dep.Exh. H at 7, Tr. at 98; Exh. G), and he never told Plaintiff that he should speak only about the matter being appealed or that his remarks were not relevant. (Dismuke Dep. at 31, 55.) Further, Defendant admits in his Brief: "Despite the fact that the speech was irrelevant, Mr. Zapach was allowed to continue until he started mentioning the names of Jasper and Joan Dreibelbis. Jasper Dreibelbis was deceased. Theodore Zapach ran for Supervisor against Joan Dreibelbis on zoning issues previously." (Def.Br. at 4) (citing Zapach Dep. at 8, Dismuke Dep. at 24.) Defendant's Brief also states: "Defendant Dismuke took the action that he took because Zapach persisted in naming members of the Board of Supervisors, one of whom was deceased. By continuing to do so, Plaintiff offended Chairman Dismuke's sense of propriety, and he intervened in an attempt to curtail the speech...." (Def.Br. at 9.) Finally, the brief also states that the speech "was critical of the two supervisors who had created the original Zoning Ordinance, one of whom was deceased." (Def.Br. at 10–11.)

If the Defendant had indeed curtailed the Plaintiff's speech because it was irrelevant to the appeal before the Zoning Hearing Board, the restriction would be considered content-neutral, and we would uphold the Defendant's action as a valid restriction that was justified without reference to content, was narrowly tailored to serve a significant governmental interest, and left open ample alternative channels for communication of the information.

The government has a significant interest in the orderly and efficient conduct of its business. *See, e.g., City of Madison Joint Sch. Dist.*, 429 U.S. at 176 n. 8, 97 S.Ct. 421 ("Plainly, public bodies may confine their meetings to specified subject matter...."); *Grayned v. City of Rockford*, 408 U.S. 104, 119, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972) (finding that city has a compelling interest in undisrupted school session); *White v. City of Norwalk*, 900 F.2d 1421, 1425–26 (9th Cir.1990) ("[A] city Council meeting is ... a governmental process with a governmental purpose. The Council has an agenda to be addressed and dealt with. Public forum or not, the usual first amendment antipathy to content-oriented control of speech cannot be imported into the Council chambers intact.... While a speaker may not be stopped from speaking because the moderator disagrees with the viewpoint he is expressing, it certainly may stop him if his speech becomes irrelevant or repetitious."); *Jones v. Heyman*, 888 F.2d 1328, 1333 (11th Cir.1989) (finding a significant governmental interest in controlling the agenda and preventing the disruption of public meetings); *Wright v. Anthony*, 733 F.2d 575, 577 (8th Cir.1984) (finding that public hearing procedure limiting speech time to five minutes per speaker was a valid time, place, and manner restriction that served a significant governmental interest in conserving time and allowing others opportunity to speak).

At best, for the Defendant, we could find that there is a dispute of material fact as to Defendant's reason for his interference with and suppression of Plaintiff's speech, and deny summary judgment on that basis. It appears, however, that this materi-

---

Q: Did you say at any point, before you said get off that mike to Mr. Zapach your comments are not germane or explain that his comments were not germane?

A: No, I didn't say it in that way.

Q: Did you say it in any other way that I don't want you to bring in people's names?

A: No. I don't recall any.
(Dismuke Dep. at 26–27, 30–31.)

al fact is not in dispute, notwithstanding Defendant's testimony in his deposition.[10] Defendant has admitted in his deposition that he suppressed Plaintiff's speech for the content- and viewpoint-based reasons of the mentioning of certain individuals' names, which offended Plaintiff's sense of propriety, because one of the individuals was deceased and the other had been Plaintiff's political opponent. Statements such as these in briefs are treated as admissions by the party. *See Conte Bros. Auto., Inc. v. Quaker State–Slick 50, Inc.,* 165 F.3d 221, 235 (3d Cir.1998) (an ambiguity as to the meaning of the scope of an allegation was resolved by admissions in the plaintiffs' brief) (citing *Glick v. White Motor Co.,* 458 F.2d 1287, 1291 (3d Cir. 1972) ("Judicial admissions are binding for the purpose of the case in which the admissions are made including appeals, and ... an admission of counsel during the course of trial is binding on his client.")); *Jenkins v. Red Clay Consol. Sch. Dist. Bd. of Educ.,* 4 F.3d 1103 (3d Cir.1993); *Henglein v. Informal Plan for Plant Shutdown Ben. for Salaried Employees,* 974 F.2d 391 (3d Cir.1992); *United States v. Leo,* 941 F.2d 181, 193 (3d Cir.1991). We must therefore find that the Defendant suppressed Plaintiff's speech for a content-based reason.

▉ A state actor may not suppress speech based on its content unless the restriction is "narrowly drawn to effectuate a compelling state interest." *Perry,* 460 U.S. at 46, 103 S.Ct. 948; *see also Kreimer v. Bureau of Police,* 958 F.2d 1242, 1256 (3d Cir.1992). The Defendant has provided no reason to justify restricting Plaintiff's speech based on its content, other than that his sense of propriety was offended. Such a reason is not compelling. We will hold, therefore, that Defendant

violated Plaintiff's right to freedom of speech that is guaranteed by the First Amendment to the United States Constitution.

## 2. Qualified Immunity

The United States Supreme Court has repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation because "[t]he entitlement is an immunity from suit rather than a mere defense to liability." *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). The Supreme Court has established that qualified immunity shields state officials performing discretionary functions from suit for damages if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Wilson v. Layne,* 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). In evaluating the Defendant's claim of qualified immunity, we "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Conn v. Gabbert,* 526 U.S. 286, 290, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999); *see also Wilson v. Layne,* 526 U.S. at 609, 119 S.Ct. 1692; *Wilson v. Russo,* 212 F.3d 781 (3d Cir. 2000).

▉ The Supreme Court has explained that the meaning of "clearly established" depends on " 'the level of generality at which the relevant 'legal rule' is to be

---

**10.** One may also infer from the excerpt in the deposition reprinted in the previous footnote that the deponent is not entirely credible.

identified.'" *Wilson,* 526 U.S. at 614, 119 S.Ct. 1692 (quoting *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). The Court further explained that:

> [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has been previously held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Id.* at 614–15, 119 S.Ct. 1692 (quoting *Anderson,* 483 U.S. at 640, 107 S.Ct. 3034). To determine whether an objectively reasonable person in the Defendant's position would have known that his conduct violated clearly established rights, we must evaluate "the objective (albeit fact-specific) question whether a reasonable officer could have believed ... [the action] to be lawful, in light of clearly established law and the information the officer possessed." *Anderson,* 483 U.S. at 641, 107 S.Ct. 3034. Under this standard, immunity is based on whether the officials' "actions could reasonably have been thought consistent with the rights they are alleged to have violated," not on their subjective understanding of the law. *Anderson,* 483 U.S. at 639, 107 S.Ct. 3034; *see also Malley v. Briggs,* 475 U.S. 335, 345, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). If a reasonable official would have known that his conduct violated the right, then an official is not entitled to immunity for such actions. *See Harlow,* 457 U.S. at 813–20, 102 S.Ct. 2727; *Bartholomew v. Pennsylvania,* 221 F.3d 425, 428 (3d Cir.2000).

At the most general level, the right that was violated here was the right to speak in a designated public forum without restriction on content or viewpoint unless such content-based restriction was narrowly tailored to effectuate a compelling governmental interest. We established in Part IV. B., *supra,* that such a violation occurred. In determining whether that right was clearly established, however, we are faced with the following objective, fact-specific question: Could a reasonable official have believed that interfering with a person's political speech at a designated public forum was not a First Amendment violation, when the speaker was orating on topics not directly related to the matter before the public body and on which the public body could not act, i.e. topics outside those designated for discussion, but the official gave a different content-based and viewpoint-based reason for interfering with the speech? [11]

Here, Defendant's actions can reasonably be thought to be consistent with Plaintiff's First Amendment rights. As discussed *supra,* op. at 689–90, the public was clearly notified that their comments had to be relevant to whether or not the special exception at issue should be granted. Under clearly established law, the official conducting a public meeting has the right to stop any speaker whose speech

11. We reject Defendant's argument that because there is no known Third Circuit or Eastern District of Pennsylvania case in which a Zoning Hearing Board chairperson ruled that a particular person's speech is out of order, or any case that stands "for the proposition that speaking out on a Curative Amendment in a Zoning Board context is protected speech," Defendant could not have violated clearly established rights. As the Supreme Court has stated, it is not the case that "an official action is protected by qualified immunity unless the very action in question has been previously held unlawful," but rather the action is protected by qualified immunity unless "in the light of pre-existing law" the unlawfulness is apparent. *Wilson,* 526 U.S. at 614–15, 119 S.Ct. 1692 (citing *Anderson,* 483 U.S. at 640, 107 S.Ct. 3034).

became irrelevant, as a valid content-neutral restriction. See op. *supra* at 692, *infra* at n. 14. Further, because Zoning Hearing Boards have been held by Pennsylvania courts to be quasi-judicial entities, such an official could reasonably believe that he had the right to stop speakers whose speech had become irrelevant. *See infra* Part IV. B. 3., op. at 695–97. The Defendant allowed Plaintiff to continue speaking even though his speech had become irrelevant to the matter at issue, in the hope that Plaintiff would return to the topic.[12] (Dismuke Dep. at 22.) The Defendant finally stopped the Plaintiff when he started using the names of past and current Township Supervisors, and their actions, that were not relevant to the appeal under consideration. (Dismuke Dep. at 20–27, 30–31, Def.Br. at 4, 9, 10–11.) The Defendant stated that the use of these names in this context indicated to him that the Plaintiff would not soon be returning to the topic at issue, and because the speech was becoming even more irrelevant, he stopped Plaintiff from speaking.

See id. Even though Defendant also admits to a content-based motive for terminating Plaintiff's speech, i.e. being offended at the use of these names, a reasonable official presiding over a quasi-judicial body probably would not have known that the action of stopping the speech because the Plaintiff used names violated Plaintiff's First Amendment rights.[13] Neither the names themselves nor the context in which they were used were relevant to the issue before the Board.

Therefore, we find that Defendant is entitled to qualified immunity and we will grant summary judgment on his behalf.

### 3. Quasi-judicial Absolute Immunity

The proponent of a claim to absolute immunity bears the burden of establishing the justification for such immunity. *See Antoine v. Byers & Anderson*, 508 U.S. 429, 433, 113 S.Ct. 2167, 124 L.Ed.2d 391 (1993) (citing *Burns v. Reed*, 500 U.S. 478, 486–487, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991)). Defendant

12. The Defendant testified in his deposition that the prepared text "is part of a previous presentation made by Mr. Zapach in township meetings and also in the letter that I got a number of years ago as I recall was in there stating what he felt-what he would like to see done and it was totally different than what we were in the meeting for so I let him go for a while hoping he would twist back into what he should have and when he came to these names it was obvious he was not going to and I said I may as well stop it." Dismuke Dep. at 22.

13. Many courts have held that officers presiding over duly called public meetings of legislative bodies may offend the First Amendment when they make ad hoc parliamentary rulings, and some have held that such officers are not entitled to summary judgment on qualified immunity grounds when there is a question about the motive for such rulings-content-based or content-neutral. *See, e.g., City of Madison Joint Sch. Dist. No. 8 v. Wisconsin Employment Relations Commis-*

*sion*, 429 U.S. 167, 175, 97 S.Ct. 421, 50 L.Ed.2d 376 (1976) (school board meetings); *Mesa v. White*, 197 F.3d 1041 (10th Cir.1999) (county commissioners meeting); *White v. City of Norwalk*, 900 F.2d 1421, 1425–26 (9th Cir.1990) (city council meeting); *Collinson v. Gott*, 895 F.2d 994 (4th Cir.1990) (county commissioners meeting); *Jones v. Heyman*, 888 F.2d 1328, 1333 (11th Cir.1989) (city commission meeting); *Musso v. Hourigan*, 836 F.2d 736 (2d Cir.1988) (board of education meeting); *Wilkinson v. Bensalem Township*, 822 F.Supp. 1154, 1157–59 (E.D.Pa.1993) (township council meeting); *Brown v. Smythe*, 780 F.Supp. 274, 281 (E.D.Pa.1991) (borough council meeting). We have found no such cases dealing with quasi-judicial entities, however, and the powers and purposes of legislative and judicial bodies are sufficiently different that cases involving content-based parliamentary rulings by presiding officers of legislative bodies cannot be used to show that the law as to rulings by presiding officers of quasi-judicial bodies is clearly established.

asserted the defense of quasi-judicial immunity in his Answer to Plaintiff's Complaint, but he did not specifically raise the defense in his Motion for Summary Judgment, his brief in support thereof, or his supplemental memorandum of law. Defendant's brief does, however, contain references to himself as a quasi-judicial officer and the Zoning Hearing Board as a quasi-judicial body. (Def.Br. 4, 8.) Defendant's brief, supplemental memorandum of law, and his deposition contain descriptions of the powers and duties of the Board such that we could find that it is a quasi-judicial body. (Def.Br. 2; Def.Supp.Mem. 3–4, Exh. C; Dismuke Dep. 8–9, 13–15, 47–50.) Defendant has therefore sufficiently raised the defense upon motion for summary judgment.

Numerous courts have held or referred to Zoning Hearing Boards in Pennsylvania as quasi-judicial bodies and their members as enjoying quasi-judicial immunity. *See Urbano v. Meneses*, 288 Pa.Super. 103, 431 A.2d 308 (1981) (zoning hearing board is a quasi-judicial tribunal that enjoys absolute judicial immunity); *see also Omnipoint Corp. v. Zoning Hearing Bd. of Pine Grove Tp.*, 181 F.3d 403 (3d Cir.1999) (citing *Urbano* approvingly); *Norate Corp. v. Zoning Bd. of Adjustment*, 417 Pa. 397, 207 A.2d 890, 893 (1965) (referring to a zoning board as "a quasi-judicial body"); *Milliner v. Enck*, 709 A.2d 417, 419 (Pa.Super.Ct.1998) (citing *Urbano* approvingly); *Delate v. Kolle*, 667 A.2d 1218, 1221 (Pa.Commw.Ct.1995) (same).

 Judicial immunity is "an absolute immunity from all claims relating to the exercise of judicial functions." *Antoine v. Byers & Anderson*, 508 U.S. 429, 433 n. 8, 113 S.Ct. 2167, 124 L.Ed.2d 391 (1993). It is well-settled that a judge is entitled to absolute immunity for all acts committed within his judicial jurisdiction, including grave procedural errors. *Stump v. Sparkman*, 435 U.S. 349, 356–57, 98 S.Ct. 1099,

55 L.Ed.2d 331 (1978) ("[T]he necessary inquiry in determining whether a defendant judge is immune from suit is whether at the time he took the challenged action he had jurisdiction over the subject matter before him.... A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'") (quoting *Bradley v. Fisher*, 13 Wall. 335, 352, 20 L.Ed. 646); *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) (applying the broad, absolute judicial immunity to § 1983 actions).

 Whether an act is judicial depends on "the 'nature' and 'function' of the act, not the 'act' itself." *Mireles v. Waco*, 502 U.S. 9, 13, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (quoting *Stump*, 435 U.S. at 362, 98 S.Ct. 1099). Courts look to two factors in making this determination: the nature of the act, i.e. whether the act is a measure normally performed by a judge, and the expectations of the parties, i.e. whether the parties dealt with the judge in his judicial capacity. *See id.* at 12, 112 S.Ct. 286.

 Maintaining order in a judicial or quasi-judicial proceeding is an integral part of the judicial function. *See, e.g., Mireles*, 502 U.S. at 10–13, 112 S.Ct. 286 (holding that a judge's order to his courtroom police officers "to forcibly and with excessive force seize and bring plaintiff into his courtroom" was a judicial act); *In re Orthopedic "Bone Screw" Products Liability Litigation*, 132 F.3d 152, 156 (3d Cir.1997) ("The Supreme Court has recognized the inherent power of courts to impose sanctions in order to manage their own affairs and achieve orderly and expeditious disposition of cases. These powers include the power to manage their dockets and impose silence and order on those

before the court.") (citing *Chambers v. NASCO Inc.*, 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); *Link v. Wabash*, 370 U.S. 626, 630–31, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)); *Andrisani v. Lucas*, 1993 WL 164873, 1993 U.S.App. LEXIS 12653 (9th Cir., May 18, 1993) (prohibiting relevant evidence and testimony from being admitted is a judicial act); *Crooks v. Maynard*, 913 F.2d 699, 700 (9th Cir.1990) (finding that a contempt citation is a judicial act); *Dean v. Shirer*, 547 F.2d 227, 228, 231 (4th Cir.1976) (judge berating an attorney "with a long string of offensive and threatening epithets, including aspersions as to [the attorney's] ancestry" and "threaten[ing] [the attorney] with physical abuse and ... hav[ing] him put in jail" were all found to be judicial acts); *Hawkins v. Comparet–Cassani*, 33 F.Supp.2d 1244, 1251 (C.D.Cal.1999) (judge using a stun belt on a criminal defendant before her to maintain order in her courtroom was a judicial act, and would be so "even if the judge acted improperly to silence speech with punitive intentions").

■ Defendant was the Chairperson of the Lower Milford Township Zoning Hearing Board, which was acting in its quasi-judicial capacity, hearing an appeal of a request for a special exception, during the events at issue. The party bringing the appeal expected that the board was acting in a judicial capacity.[14] As Chairperson, Defendant was empowered to keep order at the hearing, control the flow of the meeting, and stop speakers whose comments were not relevant to the matter under consideration, all of which are judicial acts. Defendant's action of stopping Plaintiff from speaking after his comments became generally irrelevant and contained irrelevant references to specific people, are within such powers. Therefore, Defendant is entitled to absolute immunity as a quasi-judicial officer for his stopping Plaintiff from speaking at the hearing, and we will grant summary judgment on this basis.

## V. STATE LAW ASSAULT AND BATTERY CLAIMS

■ Our jurisdiction over the state law assault and battery claims was based on supplemental jurisdiction, but, as discussed *supra*, we will grant summary judgment as to the § 1983 claim. Ordinarily, when a court dismisses a federal claim early on in the case, it will not use its discretion to retain jurisdiction over any supplemental claims, but rather will dismiss the state

---

**14.** 53 Pa. Stat. § 10908 sets forth the powers and responsibilities of the Board with respect to hearing procedures. The Board must make findings and enter a written decision. *Id.* (2), (9). The chairman or the presiding officer at the hearing has the "power to administer oaths and issue subpoenas to compel the attendance of witnesses and the production of relevant documents and papers, including witnesses and documents requested by the parties." *Id.* (4). The parties have the right to be represented by counsel and "the opportunity to respond and present evidence and argument and cross-examine adverse witnesses on all relevant issues." *Id.* (5). Formal rules of evidence do not apply, "but irrelevant, immaterial, or unduly repetitious evidence may be excluded." *Id.* (6). A stenographic record of the proceedings must be kept. *Id.* (7). Ex parte communications are not allowed. *Id.* (8). 53 Pa. Stat. § 10909.1 gives a Zoning Hearing Board "exclusive jurisdiction to hear and render final adjudications" as to applications for special exceptions to ordinances and appeals from decisions made by a Zoning Officer, among other things. Applicants for appeals or hearings are required to attest to truth of the statements in their applications. (Def.Supp.Mem.Exh. A.) When the hearing in question was called to order, the Defendant reminded the public that the meeting was a judicial hearing; all of the testimony would be recorded by both an official reporter and by video; and any members of the public who wished to testify about the appeal had to be sworn, but they would not be sworn if they simply asked a question. (Def.Supp.Mem. Exh. C, Hearing Tr. at 3–4.)

claims without prejudice to raise the matters in state court. *See Angst v. Mack Trucks,* 969 F.2d 1530, 1534–5 (3d Cir. 1992); 28 U.S.C. § 1367(c)(3). We see no reason to do otherwise in this case, because Plaintiff has been litigating these claims concurrently in state court. We do not express any opinion on the substance of these claims or whether the Defendant is entitled to immunity.

## VI. CONCLUSION

Defendant violated Plaintiff's First Amendment rights by interfering with and stopping Plaintiff's speech based on its content without a compelling reason. However, because Defendant did so while presiding over a quasi-judicial body, and Plaintiff's remarks had become irrelevant to the matter on appeal at the time he was stopped, his rights in this context were not so clearly established that a reasonable official in the Defendant's position would have known that he was violating Plaintiff's rights. Therefore, Defendant is entitled to qualified immunity for his actions. Further, because Defendant was acting as a quasi-judicial officer and his act of silencing the Defendant was of a judicial nature, Defendant is also entitled to absolute immunity. Because we have found that Defendant has immunity for his interfering with Plaintiff's speech, we will grant Defendant's motion for summary judgment as to the § 1983 First Amendment claim. In the absence of a federal claim, we decline to exercise supplemental jurisdiction over the state law claims and therefore we will dismiss them without prejudice.

An appropriate order follows.

### ORDER

AND NOW, this 26th day of March, 2001, upon consideration of Plaintiffs' Complaint, filed on August 7, 2000; Defendant's Answer, filed on October 4, 2000; Defendants' Motion for Summary Judgment, Defendant's Brief in Support of Mo-

tion for Summary Judgment, and attachments thereto, filed on January 31, 2001; Plaintiffs' Brief in Opposition to Defendant's Motion for Summary Judgment and attachments thereto, filed on February 20, 2001; Defendant's Supplemental Memorandum of Law, filed on March 19, 2001; it is hereby ORDERED, consistent with the foregoing Opinion, that:

1. Qualified immunity is FOUND and quasi-judicial absolute immunity is FOUND and summary judgment is GRANTED with respect to the First Amendment claim brought pursuant to 42 U.S.C. § 1983, and JUDGMENT IS ENTERED in favor of the Defendant as to that claim;

2. Plaintiff's state law claims are DISMISSED without prejudice; and

3. This case is CLOSED.